# EXHIBIT 4

Spriggs 25 YEARS Hollingsworth

Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

David J. Taylor
202.898.5838
davidtaylor@spriggs.com

January 19, 2006

**VIA HAND-DELIVERY**

General Counsel
Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Attn: Procurement Law Control Group

| | | |
|---|---|---|
| Re: | **Protest by Shirlington Limousine & Transportation, Inc.** | |
| | Solicitation No.: | HSHQDC-07-R-00009 |
| | Agency: | U.S. Department of Homeland Security<br>Office of Procurement Operations<br>Operations Acquisition Division |

Dear General Counsel:

This firm represents Shirlington Limousine & Transportation, Inc. in this pre-award protest. Shirlington Limousine & Transport, Inc. ("Shirlington") is headquartered at 717 D Street, N.W., Suite 300, Washington, D.C. 20004. Shirlington's contact information is:

| | |
|---|---|
| Telephone: | 1-800-418-9098 |
| Fax: | (202) 248-0722 |
| Email: | shirlimo@aol.com |

Solicitation Number HSHQDC-07-R-00009 (the "Solicitation") was issued by the United States Department of Homeland Security ("DHS"). Shirlington protests on the grounds that DHS erred in rejecting Shirlington's proposal in response to that Solicitation because either of two exceptions to the timeliness requirements apply to this case, namely (i) the agency engaged in wrongful action which resulted in the late submission of Shirlington's proposal, or (ii) the government had receipt and control of the proposal prior to the time set for receipt thereof.

Shirlington is an interested party under 4 C.F.R. § 21.0(a)(1), as it is an actual offeror whose direct economic interest would be affected by award or failure to award a contract. Shirlington also is the "incumbent" contractor performing the same services for a portion of

DHS' transportation needs under an existing contract, Contract No. HSHQDC-05-C-00036 (the "Existing Contract").

The timely filing of this protest by Shirlington effectuates an automatic stay that bars DHS from making an award under the Solicitation pending the outcome of this protest. 48 C.F.R § 33.104(b); FAR 33.104(b).

## I. BACKGROUND

### A. The Existing Contractual Relationship

Shirlington is a certified HUBZone small business concern engaged in the transportation business. Shirlington was awarded its first contract with DHS on April 27, 2004, and the Existing Contract on October 25, 2005. The Existing contract was solicited as a HUBZone small business set-aside to provide transportation services to DHS employees within the District of Columbia and surrounding areas. Under the Existing Contract, Shirlington operates an employee shuttle service between DHS facilities in the Washington, D.C. metropolitan area and operates an executive motor pool sedan service for DHS managers and senior executives.

It is well documented that Shirlington has performed admirably under both its first contract and the Existing Contract. For example, Shirlington was given only 48 hours notice to commence the first contract, rather than the 60 to 90 days of transition time typical in a transportation contract. Shirlington was able to adhere to this shortened deadline despite the many challenges inherent in coordinating and executing such a large undertaking in such a short amount of time. This ability to adapt and Shirlington's history of performance excellence are reflected in the fact that many of the goals and initiatives first implemented by Shirlington are now currently being used as the benchmark for the current Solicitation.

### B. The Solicitation

DHS issued the current Solicitation on November 20, 2006. The Solicitation is a request for proposals under which DHS will award multiple, fixed unit price, indefinite quantity/indefinite delivery contracts for providing transportation services to DHS employees within the Washington, D.C. metropolitan area. Request for Proposals ("RFP") at 3. The Solicitation bears resemblance to Shirlington's Existing Contract in many respects, however, separate contracts will be awarded for the shuttle bus and sedan services under the Solicitation.

It is clear that the instructions for delivering proposals under the Solicitation were inartfully drafted. Under "Contacts" in the Contract Administration Data on p. 14 of the Solicitation, the names of Frank Rumph, Contract Specialist, Iva Capps, Contract Specialist, and Victoria Short, Contracting Officer appear. Under each of these contact names appears the address:

Office of Procurement Operations
7th and D
245 Murray Lane, S.W.
Bldg. 410
Washington, D.C. 20528

The Solicitation Instructions to Offerors at page 38 stated that offers were to be received by 2:00 p.m. EST on December 12, 2006, and should be submitted to the following address:

Frank Rumph, Contract Specialist
OPO Headquarters Procurement Division
7th & D Street, S.W.
Washington, D.C. 20024

And to add to the confusion, Standard Form 1449 Box 15 on the front of the Solicitation listed the delivery address as:

Department of Homeland Security
Office of Procurement Ops. (DO)
245 Murray Lane
Building 410
Washington, D.C. 20528

Therefore, the Solicitation listed a whole variety of addresses: Murray Lane and 7th and D in one place, and two specific instructions to deliver, one to Murray Lane and one to 7th and D.

Shirlington has since learned that 7th and D is the "physical address," while Murray Lane is a "post office address." In the past, Shirlington delivered its proposal for the first contract it had with DHS at 7th and D Street, while its second proposal with regard to the Existing Contract was delivered electronically.

On December 8, 2006, DHS issued Amendment 0003 to the Solicitation to add transition language to the PWS and to provide the Government's response to questions submitted in response to the Solicitation. These questions indicate that the agency was aware of the confusion as to where proposals should be submitted. Among the questions addressed was:

> **1. Question:** Regarding solicitation. The SF 1449, 15 states "Deliver to Department of Homeland Security Office of Procurement ops (DO), 245 Murray Lane, Building 410, Washington, D.C. 20528. @ page 38 the delivery address is 7th and D Street, SW. Please clarify.

**Government Response:** Change the delivery address @ 38 to read: Department of Homeland Security Office of Procurement Operations, 245 Murray Lane, Building 410, Washington DC 20528. ATTN Frank Rumph.

Amendment 0003 also extended the time and date for proposal submission until December 19, 2006, at 10:00 a.m. EST.

Shirlington submitted its proposal on December 19, 2006.[1] However, because it had previously gone to the Bid Room at 7th and D when physically delivering documents, it took the proposal there. It should be noted that the entire DHS Procurement Operations Headquarters is located in that building, as are some GSA offices.

Upon entering the facility, Lucretia Pearce, the Chief Operating Officer and Project Manager for the Existing Contract, took the proposal to the Bid Room, which is clearly marked as a DHS Bid Room, and asked the person there (who has since been identified as Alicia Yvonne Brown) if this was the right place to submit the proposal. See photograph of DHS Bid Room sign, attached as Exhibit B. Her response was "YES," whereupon she dutifully signed a Bid Receipt, which has the correct solicitation number entered thereon in her handwriting and which is date stamped RECEIVED, 2006 DEC 19 A 9:46:20 GSA-NCR BID ROOM. See photocopy of bid receipt, attached as Exhibit C; see also declaration of L. Pearce, included as Attachment 1.

Based upon its prior experiences, and the representations described above, Shirlington assumed that its proposal had been duly submitted to and received by the Department of Homeland Security. Shirlington was not aware that there was any problem with its submission until Shirlington's attorneys received the Agency Report on January 9, 2007, in a different Protest to the same Solicitation that Shirlington had brought at the Government Accountability Office. The Agency Report stated, among other things, that Shirlington had NOT submitted a proposal in response to the RFP. This shocking news was corroborated when Mr. David Taylor, Shirlington's attorney, sent Mr. Baker and Ms. Pearce over to the DHS location at 7th and D Street to determine the identity of the person who had signed the bid receipt (as the signature was illegible). It was then discovered by the person in charge of that office, Mr. Carl Campbell, that the proposal, all five copies of both volumes, plus CD-ROMs, had not been retrieved by DHS, but instead remained sitting on a table in the back room. See declarations of L. Pearce and C. Baker, included as Attachments 1 and 2.

---

[1] Shirlington's proposal submitted in response to the Solicitation is attached to this protest as Exhibit A. Protester respectfully requests that its proposal be covered in its entirety by the Protective Order issued in this matter.

Shirlington contends that both justice and fairness dictate that DHS accept its proposal for consideration for award of the DHS Transportation contract.

## II. GROUNDS OF PROTEST

Shirlington acknowledges the general rules stating that a proposal which is delivered late or at the wrong place is justifiably unacceptable. See FAR § 15.208(a) and FAR § 15.208(b)(1). However, there are exceptions to this standard, and those exceptions almost always turn on a very fact-driven analysis of the circumstances surrounding the delivery of the bid or proposal.

As demonstrated above, here we have both a highly unusual and highly compelling factual situation. The proposal was submitted to the place where Shirlington was accustomed to delivering documents and invoices to the government on similar contracts, including the Existing DHS Contract. It was delivered to a room at which DHS had routinely accepted proposals in the past, and it was delivered to a person who represented to Shirlington that it was appropriately delivered. See declaration of L. Pearce, Attachment 1.

Although we are aware that there was an attempted clarification of this issue, Shirlington had been led to believe and was under the impression that 245 Murray Lane and 7th and D Street were the same place. See declaration of L. Pearce, Attachment 1. The fact that the Solicitation listed 7th and D Street and Murray Lane together in the Contacts section supports this belief that they were one and the same address. Secondly, because Shirlington was not mailing its proposal, it did not believe that the mailing address was of importance. Instead, Shirlington submitted the proposal to the physical address and place to which it was accustomed.

Given these facts, Shirlington contends that this case falls into either of two exceptions to the general timeliness requirements. First, the facts suggest that DHS engaged in wrongful action, which resulted in the late submission of its proposal. See e.g., Hosp. Klean of Texas, Inc., B-295836, April 18, 2005, 2005 CPD ¶ 185 at 3, citing O.S. Sys., Inc., B-292827, Nov. 17, 2003, 2003 CPD ¶ 211 at 3; Immediate Sys. Res., Inc., B-292856, Dec. 9, 2003, 2003 CPD ¶ 227 at 3. Second, there is acceptable evidence to establish that the bid was received and under the Government's control prior to the time set for receipt. FAR § 15.208(b)(1)(ii).

### A. Case Law Exception

GAO has recognized an exception to the timeliness requirement with respect to hand-carried proposals. See e.g., Hosp. Klean of Texas, Inc., B-295836, April 18 2005, 2005 CPD ¶ 185 at 3, citing O.S. Sys., Inc., B-292827, Nov. 17, 2003, 2003 CPD ¶ 211 at 3; Immediate Sys. Resources, Inc., B-292856, Dec. 9, 2003, 2003 CPD ¶ 227 at 3. The exception states, "a hand-carried proposal that arrives late may be considered if improper government action was the paramount cause for the late submission, and where consideration of the proposal would not

compromise the integrity of the procurement process. . ." Hosp. Klean of Texas, Inc., B-295836, April 18 2005, 2005 CPD ¶ 185 at 3.

Shirlington contends that DHS should be required to accept Shirlington's proposal as properly filed because (i) the agency engaged in wrongful action which resulted in the late submission of its proposal, and (ii) consideration of the late proposal will not compromise the integrity of the competitive procurement process. See id.

**1. Wrongful Action**

The government's failure to provide an adequate description of the multiple steps necessary to submit the proposals sought under the Solicitation was the paramount cause for the late receipt of Shirlington's proposal.

Shirlington is asking for a hearing with substantially more testimony in this case than is normal in a traditional GAO protest because it is so highly unusual and intensely fact driven. For example, one has to wonder whether Mr. Frank Rumph, or any of the other individuals listed as "Contacts" in the Solicitation, was contacted or called any of the other offerors to give them guidance as to where or how to deliver their proposals; whether any of them offered suggestions as to mail or overnight delivery versus physical delivery; or whether any of them issued instructions as to additional time required to pass heightened security at Murray Lane.

If even one of the other nine proposals received in response to this solicitation was delivered and accepted at the 7th and D Street address, or if even one of the other offerors was given more explicit instructions by Mr. Rumph, Ms. Short, or Ms. Capps as to how and where to deliver the proposal, and this information was not shared with Shirlington, Shirlington's proposal must be accepted. Only by securing hearing testimony will Shirlington be able to ascertain exactly what happened.

In addition, Shirlington should be allowed to take the hearing testimony of Carl Campbell, Chief of the Operations Branch Procurement Division, and Alicia Brown, the woman who accepted the proposal, signed and date-stamped the receipt and represented that the bid room at 7th and D Street was the correct location for delivering the proposal. See Bid Receipt attached as Exhibit C; declaration of L. Pearce, Attachment 1.

Shirlington acknowledges that even in cases where the late receipt of a proposal was caused, in part, by erroneous government action, a late proposal will not be considered if the offeror significantly contributed to the late receipt by not acting reasonably in fulfilling its responsibility to deliver the proposal to the proper place, at the proper time. Integrated Support Sys., Inc., B-283137.2, Sept. 10, 1999, 99-2 CPD ¶ 51 at 1. For example, the government may argue that Shirlington had a duty to inquire about the appropriate address for bid deliveries. However, Shirlington submits that when there is an ambiguity followed by an inquiry, as

occurred in this case, there is an increased obligation on the part of the government to be meticulously explicit in explaining where and how bids should be submitted.

Shirlington contends that the facts and testimony of the witnesses described above will reveal that the government's wrongful action was the paramount cause of its allegedly improper submission.

**2. Integrity of the competitive procurement process**

Compelling DHS to consider Shirlington's proposal will not affect the integrity of the procurement because Shirlington relinquished control over the proposal before the bid deadline and has had no opportunity to alter its terms since that time. In the past, GAO has held that the integrity of the competitive procurement process will not be compromised where the offeror relinquished control over the bid before the time for bid opening, and the offeror affirms that it never again had the opportunity to see, modify, or otherwise handle the proposal. See Select, Inc., B-245820, Jan. 3, 1992, 92-1 CPD ¶ 22 at 3. Here, Shirlington relinquished control over the proposal by delivering it to Alicia Brown at the DHS Bid Room at 9:46:20 a.m. on December 19, 2006. See Bid Receipt attached as Exhibit C; declaration of L. Pearce, Attachment 1. Proposals were due on December 19, 2006, at 10 o'clock a.m. RFP Amendment 0003. Therefore, Shirlington had surrendered the proposal to the government's control prior to the submission deadline. In addition, Counsel for the Department of Homeland Security has acknowledged that the proposal remained in the Bid Room until it was found on January 10, 2007. See Letter from Rose Anderson, dated Jan. 11, 2007, attached as Exhibit D. In the interim, Shirlington has not had the opportunity to see, alter, or even handle the proposal since turning it over to the government on December 19, 2006. See declarations of L. Pearce and C. Baker, Attachments 1 and 2.

Further, this Solicitation has been protested on other grounds. Accordingly, the Contracting Officer has stated that the Office of Procurement Operations has voluntarily postponed the evaluation of proposals pending the results of that protest. See Contracting Officer Victoria Short Statement of Relevant Facts, attached as Exhibit E. Therefore, allowing Shirlington's proposal to be considered will prejudice none of the other offerors, nor will it prejudice the government.

It is also important to note that the filing of this protest will result in an automatic stay of the award of this contract. FAR 33.104(b). This stay also helps to ensure that the integrity of the competitive procurement process will not be compromised should DHS be compelled to consider Shirlington's proposal for award.

**B. Statutory Exception – FAR § 15.208(b)(1)(ii)**

In addition to the case law exception, FAR § 15.208(b)(1)(ii) sets out a statutory exception to the filing requirements. It states that a "late" bid may be considered if (i) it is received before award is made; (ii) accepting the bid would not unduly delay the acquisition; and (iii) there is acceptable evidence to establish that it was received at the government installation designated for receipt and was under the government's control prior to the time set for receipt. See FAR § 15.208(b)(1)(ii).

This exception is typically applied to the situation where a proposal is received at the appropriate place, but at the wrong time. By analogy, Shirlington contends that if GAO is willing to overlook timeliness if it is in the hands of the government at the right place at the wrong time, the government should also be compelled to overlook timeliness when the proposal is in the custody and control of the government at the wrong place at the right time.

**1. The proposal was received before the award and accepting the bid would not delay the acquisition**

To date, no award has made in this procurement. Thus, there is no prejudice to the government or other parties in accepting Shirlington's proposal because there is an automatic CICA stay in effect, barring DHS from awarding the contract until this protest is resolved. 48 C.F.R. § 33.104(b); FAR 33.104(b). In addition, the Agency has represented to Shirlington that no other actions are being taken to even evaluate the proposals, much less award the contract. See Contracting Officer Victoria Short Statement of Relevant Facts, attached as Exhibit E. There would, on the other hand, be a substantial prejudice to Shirlington if it were not allowed to compete for the award.

**2. Shirlington's bid was in the control of the government**

The date and time stamped Bid Receipt provided to Ms. Pearce at the 7th and D Street Bid Office reflects the fact that the proposal was submitted to the government before the December 19, 2006 10 o'clock a.m. deadline stated in the third amendment to the RFP. See Bid Receipt attached as Exhibit C; RFP Amendment 0003.

Shirlington acknowledges that the government will likely argue that this exception is not applicable to the facts of this case. However, it is important to note that the GAO has held that a strict and literal application of the bid delivery requirements should not be used to reject a bid where to do so would contravene the intent and spirit of full competition. Select, Inc., B-245820, Jan. 3, 1992, 92-1 CPD ¶ 22 at 3. In refusing to accept and consider Shirlington's proposal for award under the Solicitation, DHS is acting in contravention of the intent and spirit of competition requirements.

## III. RELIEF SOUGHT

Shirlington has demonstrated herein that either of two exceptions should apply, and DHS should accept the proposal as properly filed because (i) the wrongful acts of the Agency resulted in the improper submission of its proposal; or (ii) the agency was in possession and control of the proposal at the time bids were due. Accordingly, GAO is asked to recommend to DHS to accept Shirlington's proposal as properly filed and consider it for award. Shirlington should also be awarded its attorneys' fees herein.

Shirlington requests a ruling on this protest by the Comptroller General of the United States.

## IV. SERVICE ON AGENCY

A complete copy of this protest, including all attachments, is being furnished within one day to DHS by overnight mail to the person designated on the Solicitation as follows:

> Victoria D. Short
> Office of Procurement Operations
> 7th and D
> 245 Murray Lane, S.W.
> Bldg. 410
> Washington, D.C. 20528
> Victoria.short@dhs.gov

In addition, a courtesy copy of this protest is being provided to the contracting officer, with the exception of the voluminous attachment of Exhibit A.

## V. REQUEST FOR SECURING THE PROPOSAL

Shirlington respectfully requests that GAO recommend to the agency that it pick up and secure the original and all copies of the proposal submitted by Shirlington on December 19, 2006. It is Shirlington's understanding that these confidential and proprietary documents remain at the HSPD-12 Contractor Processing Center Bid Room, located in Room 1065 of the 7th & D Street facility.

The contracting officer has an obligation to promptly notify any offeror if its proposal was received late and must inform the offeror whether its proposal will be considered. FAR § 15-208(f). Late proposals that are not considered must nevertheless be held unopened until after award and then retained with other unsuccessful proposals. FAR § 15-208(g). Shirlington contends that the agency therefore is obligated to retrieve and hold Shirlington's proposal until after the contract is awarded, regardless of whether it (i) decides to take corrective action and

accept the proposal; (ii) the GAO recommends that DHS accept the proposal; or (iii) DHS holds it pending award to a third party. Under any scenario, DHS should secure those documents.

## VI. REQUEST FOR DOCUMENTS

Shirlington requests that DHS produce all relevant documents relating to this the subject matter of this protest.

This request includes, without limitation, all relevant documents relating in any way to the delivery of proposals submitted in response to this solicitation and the contracting officer's decision to refuse to accept Shirlington's proposal. 4 C.F.R. § 21.1(d)(2). In addition, this request also includes, without limitation, any and all e-mails, notes of calls, or internal memorandums regarding the offerors who did deliver proposals. The term "documents" should be construed in the broadest sense and refers to any and all correspondence, emails, letters, notes to file, notes of meetings, drafts, drawings, writings or recordings of any kind.

Shirlington also requests that the Agency produce the security sign-in sheets for the 7th and D Street and Murray Lane facilities for December 19, 2006.

## VII. REQUEST FOR PROTECTIVE ORDER

Shirlington requests that GAO issue a protective order controlling the treatment of protected information in this matter. 4 C.F.R. § 21.1(d)(1). The protective order is necessary to provide security over proprietary, confidential, or source-selection-sensitive material, as well as other information the release of which could result in a competitive advantage to one or more firms.

Shirlington specifically requests that the protective order be entered *nunc pro tunc* to protect the proposal that is being produced as part of the Protest and is contained as Exhibit A.

## VIII. REQUEST FOR HEARING

Pursuant to 4 C.F.R. § 21.1(d)(3) Shirlington requests that the GAO hold a hearing on this protest.

In particular, Shirlington requests the right to take the testimony of Alicia Y. Brown and Carl Campbell and anyone else involved in the receipt of proposals submitted in response to this solicitation. In addition, Shirlington also seeks the right to take the testimony of any of the individuals listed in the Contacts section of the Solicitation, including Frank Rumph, Contract Specialist, Victoria Short, Contracting Officer, and Iva Capps, Contract Specialist. RFP at p. 14.

This testimony is necessary to determine what, if any, contacts were had between potential offerors and the government. For example, what if one or more of the individuals listed

in the Contacts section of the Solicitation were contacted by an offeror, a discussion took place regarding delivery of their proposal, and this conversation was not recorded? In that event, there would be no evidence of the contact beyond the testimony of the government official and the offeror. For that reason, documents alone are not enough in this case. A hearing is necessary to resolve the variety of factual allegations that are disputed in this matter.

Respectfully submitted,

David J. Taylor
William J. Spriggs
Katherine Schultz

SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., 9th Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fx: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel for Protester*

Attachments

# ATTACHMENT 1

**DECLARATION OF LUCRETIA PEARCE,
CHIEF OPERATING OFFICER AND PROJECT MANGER,
SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.**

January 18, 2007

The purpose of this declaration is to set forth the facts relating to Shirlington Limousine & Transport, Inc.'s ("Shirlington") delivery of its proposal in response to the Department of Homeland Security ("DHS") Agency Wide Transportation Services Solicitation, HSHQDC-07-R-00009.

1. I am the Chief Operating Officer and Project Manager for Shirlington Limousine & Transport, Inc.

2. On December 19, 2006, I arrived at the Bid Delivery entrance on 7th and D Streets, S.W. at approximately 9:25a.m. with eight parcels labeled 245 Murray Lane, Building 410, Washington, DC 20528. These parcels contained Shirlington's proposals in response to the DHS Solicitation. I was greeted by two uniformed security guards and explained I had bids to deliver to Homeland Security. They visually screened my parcels and asked for my identification. At that point, I presented my Government Identification, to which they said they needed to see a second identification, namely my driver's license. I was surprised because normally I am able to access the building through two other entrances with my Government ID only. I also realized there was a time factor involved. I questioned them about this, but they were adamant and said I had to leave and return with my driver's license. I returned to my vehicle on D Street, SW to retrieve my license. Upon returning to the building, they allowed me to enter and asked me to put my parcels on the security screening apparatus.

3. I proceeded down the hallway to Bid Room 1065, identified by a sign at the entrance that said HSPD-12 Contractor Processing Center. When I entered, a young lady approached the counter. I announced I was delivering bids for the Homeland Security Transportation Contract. She asked me to place the parcels on the counter so she could check them in. She looked at the parcels identified with the address of 245 Murray Lane, Building 410, Washington, DC 20528, ATTN: Frank Rumph. She registered the parcels by identifying the Request for Proposal Number and clocking it in. She also wrote the Department of Homeland Security's Request for Proposal Number on the receipt, and signed her name, illegibly, to it. She handed the document to me, which I identified as a Bid Receipt. I thanked her and left the room.

4. For the past three years, as the incumbent contractor, Shirlington has understood that the Murray Lane address and the 7th and D Streets, SW address, are, for all intents and purposes, synonymous. In 2004, when Shirlington first began servicing the Department of Homeland Security with its existing transportation contract, the Contracting Officer's Technical Representative ("COTR") told me that Murray Drive (later changed to Murray Lane) is 7th and D Streets, SW. Shirlington has delivered and received documents labeled 245 Murray Lane, Bld. 410 at the 7th and D Streets, SW address for the past three

years. In fact, the very first document Shirlington delivered to DHS, namely, our initial proposal for the existing contract, was addressed to 245 Murray Drive, Building 410 and was submitted successfully to the 7th and D Streets, SW location. Since that time, all documents that read 245 Murray Lane, including monthly invoices and procurement modifications, as well as contract renewal documents, have been hand delivered to 7th and D Streets, SW.

5. On Tuesday, January 9, 2007 I was informed through Christopher Baker, owner of Shirlington, that attorney David Taylor of Spriggs & Hollingsworth had called to say that the DHS had responded to our GAO protest and, among other things, indicated that they had not received our proposal in response to the DHS-Wide Transportation Solicitation. Mr. Baker asked me to find the Bid Receipt I had received on the day of submission, December 19, 2006. Upon finding it and consulting with Shirlington's attorneys, Mr. Baker and I proceeded to the Bid Office to find out the name of the person who had signed the Bid Receipt, whose signature was illegible.

6. When we arrived at the Bid Office we asked if someone could help us establish the signature on the Bid Receipt because it was illegible. I asked a woman at the office whose signature was on the receipt. She immediately responded, "Alicia Yvonne Brown." We asked if Ms. Brown worked in the office, to which she responded, "She works upstairs on the 7th floor." Mr. Baker asked if Ms. Brown works for DHS. The employee responded in the affirmative, saying once again, that Ms. Brown worked upstairs.

7. Mr. Baker also asked "Do they still take DHS bids in this office?" The response was "Yes." He followed up with a second question, asking "was she [Alicia Brown] in that office to receive a big bid on the date on the Bid Receipt?" Once again, the response was "Yes." At that time we presented the Bid Receipt and expressed our concern that the proposal we had submitted could not be found. She then offered to find the Chief of the Operations Branch Procurement Management Division, Carl V. Campbell.

8. Mr. Campbell is the Chief of the Operations Branch Procurement Management Division. Mr. Campbell came out with the Bid Receipt in hand and listened while we told him about the missing proposal. He looked at the Bid Receipt and acknowledged that Alicia Brown worked for him. He then took the Bid Receipt to the back. When he returned, he asked one of us to accompany him to the back. It was decided that I should go. As I followed him, I immediately spotted our proposals sitting in plain view on a desk and exclaimed "Here they are, right here!" He acknowledged that someone must have come down with a cart and left our proposal on the desk. He also acknowledged the mistake to me and said he would be responsible for correcting it. He gave me a business card and encouraged me to call him in the morning. He informed us that he was a Contracting Officer himself and he would "get to the bottom of this." He promised to look into the matter and have someone come down to pick up the proposals and give me a call in the morning. We thanked him and left.

9. That instance was the first and only time that either Mr. Baker or myself have had occasion to see the proposals since they were delivered on December 19, 2006 at 9:46

a.m. We have had no further contact with the proposals and to the best of our knowledge, they still remain at DHS Bid Room 1065, HSPD-12 Contractor Processing Center.

10. On the morning of Wednesday, January 10, 2007, I contacted Mr. Campbell at 9:17 a.m. via my cellular phone to ask what he thought had taken place. He said he had investigated why Shirlington's proposals were on the desk and apologized, saying it was obvious the young lady failed to put them in the cart. He said he would have someone pick them up that morning. I asked him to send me an e-mail explaining what had taken place. He said to send him an e-mail with the request and he would "piggy-back" on that and respond. He confirmed my phone number and promised to call once the proposals were picked up.

11. At 1:15 p.m. January 10, 2007 I received a phone call from Mr. Campbell. He said I had delivered the proposals to the wrong address and he told me, "You have to come and pick them up. They are at the wrong place. This is not 245 Murray Lane." I said to him, twice, "7th and D Streets, SW is Murray Lane." He denied this. Then I asked him, "So where is it?" He responded, "I don't know, you need to look it up on Mapquest." He stated once again that I had to come and pick up the proposals. I ended the call by thanking him and immediately contacted Shirlington's counsel to advise them of the situation.

12. I declare under penalty of perjury pursuant to 28 U.S.C. 1746, that the foregoing is true and correct.

Lucretia Pearce
Lucretia Pearce
Chief Operating Officer and Project Manager
Shirlington Limousine & Transport, Inc.

January 18, 2007
Date

# ATTACHMENT 2

# DECLARATION OF CHRISTOPHER BAKER, OWNER SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.

January 18, 2007

The purpose of this declaration is to set forth the facts relating to Shirlington Limousine & Transport, Inc.'s ("Shirlington") delivery of its proposal in response to the Department of Homeland Security ("DHS") Agency Wide Transportation Services Solicitation, HSHQDC-07-R-00009.

1. On January 10, 2007 I escorted Ms. Lucretia Pearce to the HSPD-12 Bid Room at 7th and D Streets, SW, Washington, DC. We confronted a representative who identified herself as an employee of procurement operations. We showed her a copy of a Bid Receipt that Ms. Pearce received from the Bid Room on December 19, 2006. The receipt bore the signature of Alicia Y. Brown. The representative seemed familiar with the procedure and immediately took the document to the back of the department to consult with another employee.

2. A few minutes later, the second employee greeted us and identified himself as Mr. Campbell, he stated that he is the Chief of Operations and he understood our inquiry. He stated that the receipt was valid and the person who signed the document did work for him, and that it was clear to him the right procedures were taken and that he would investigate.

3. He then asked if one of us could walk to the back of the office with him. Ms. Pearce went with him to the back of the counter. As the two of them went to the office behind the counters, I witnessed Ms. Pearce and Mr. Campbell approach a table holding documents that I recognized as our proposal. Ms. Pearce and I both shockingly witnessed the documents on a table alone.

4. That instance was the first and only time that either Ms. Pearce or myself have had occasion to see the proposals since they were delivered on December 19, 2006 at 9:46 a.m. We have had no further contact with the proposals and to the best of our knowledge, they still remain at DHS Bid Room 1065, HSPD-12 Contractor Processing Center.

5. Mr. Campbell reviewed the information on the Bid Receipt and again said it was obvious that someone forgot or had left these documents behind. Mr. Campbell then produced a business card and gave it to Ms. Pearce. He said that this was unusual and he would make sure the documents would be delivered that day even if he had to do it himself. He mentioned that he was a Contracting Officer and understood the situation. I explicitly asked Mr. Campbell whether this office was the procurement operations room/office to receive bids for DHS. He responded, "Yes, as well as GSA." He told us not to worry and that he would confirm delivery by telephone as soon as it was done. At that point we exited the bid operations office with relief and positive anticipation.

6. As the Contractor, I conducted a review of the procedures taken by Shirlington in responding to the Solicitation, including reviewing the information in the Request for

Proposals and researching our previous responses to Requests for Proposals. I discovered that our interpretation of the Request for Proposals address was the same that it has been for the past three years, including our most recent Request for Information document, which was electronically submitted to 7th and D Streets, SW and addressed to 245 Murray Lane. All documents that were produced from DHS in the past that listed 245 Murray Lane have requested delivery at 7th and D Streets, SW.

7. I also spoke with the security guards at the 7th and D Streets, SW location. They confirmed that responses to Solicitations and proposals that list 245 Murray Lane are routinely signed in and delivered to the HSPD-12 Bid Room at the 7th and D Streets, SW address.

8. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Christopher Baker
Owner
Shirlington Limousine & Transport, Inc.

Jan 18, 2007
Date

# EXHIBIT A

# VOLUMES I & II

(Purposely Omitted)

# EXHIBIT B


HSPD-12
CONTRACTOR
PROCESSING
CENTER
1065
BID ROOM

# EXHIBIT C

| **BID RECEIPT** | 1. Date & Time Bid Received. |
| --- | --- |
| 2. IFB or Project No. HSHQDC07R 06009 | RECEIVED 2006 DEC 19 A 9:40 GSA-NCR BID ROOM |
| 3. Name & Address of Firm IFB/SFO Received From. | |
| 4. Signature of Individual Hand Delivering Bid *(Representative or Firm or Messenger Service's Name and Address).* | |
| *This to certify that the Business Service Center, Bid Room, Room 1701, National Capital Region received a hand delivered Bid on the date and time shown above.* | 5. Signature of BSC Employee Accepting Bid. [signature] |

General Services Administration GSA DC-89113101835 NCR-1275 (11-89)

# EXHIBIT D

Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528

# Facsimile transmittal

[redacted]

Re: GAO Bid Protest File # B-299241-Shirlington Limousine and Transport, Inc.

From: Rose J. Anderson, Agency Counsel

---

**NUMBER OF PAGES (INCLUDING THIS COVER SHEET): 8**

---

| Name | Firm/Agency | Phone No. | Fax No. |
|---|---|---|---|
| *Mr. David Taylor, Esq.* | *Spriggs & Hollingsworth* | | *202-682-1639* |
| | | | |

## *MESSAGE*

**Accompanying this header sheet is the Agency's renewed motion to dismiss with documentation as stated therein. If transmission problems occur, please contact Ms. Rose Anderson at 202-447-5509.**

**Confidentiality Notice**

**This facsimile transmission and/or the documents accompanying it may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify this office immediately by telephone or arrange the return of documents.**

*Office of the General Counsel*
U.S. Department of Homeland Security
Washington, DC 20528

Homeland Security

January 11, 2007

**SUBMISSION BY FAXSIMILE**

Gary Kepplinger, Esquire
General Counsel
United States Government Accountability Office
441 G Street, NW
Washington, DC 20548

Attn: Procurement Law Control Group (Mr. Kenneth Kilgour, Esquire)

Re: **File No. B-299241, Solicitation No. HSHQDC-07-R-00009, Protest of Shirlington Limousine & Transport, Inc.**

Dear Mr. Kepplinger:

I am hereby renewing the Agency's motion to dismiss in the above titled protest on the grounds that the protestor is not an "interested party" under the law and providing additional facts relevant to the original motion. When protestor's counsel received the agency record on January 9, 2007 containing the motion to dismiss and the information that there was no proposal from his client, he called and stated adamantly that there was a timely proposal and that he would provide documentation to that effect. I informed him that the Department had no evidence of such a submission. On January 10, 2007, on the way out of the building to attend a luncheon, the Contracting Officer, on a hunch, decided to stop by a Bid Room located on the first floor of the GSA building located at 7th and D Streets SW, Washington DC-a building that houses both General Service Administration (GSA) functions/personnel and some DHS functions/employees, among them, the Office of Procurement Operations. Upon entering the room, she requested assistance from an individual who identified himself as Mr. Campbell (a GSA employee) and with his assistance, she discovered that the protestor had delivered a proposal to the wrong location. Apparently, and unbeknownst to DHS employees, the proposal had been left at that location and had been sitting there until it was found yesterday. The documents (copies attached) reflect that although the protestor had the correct address on the binder, the proposal was delivered to the wrong location--and, with no improper conduct by the DHS. Instead of delivery to the location specified in the RFP Amendment 0003 directing delivery to 245 Murray Lane, Building 410, Washington, DC 20528, the proposal was taken to the GSA Bid Room on the first floor of the GSA Building located at 7th and D Streets SW, Washington, DC. (Delivery was to occur by 10:00 a.m. EST on Dec. 19, 2006). As the proposal was obviously late, the Contracting Officer did not take possession of the proposal upon her discovery. (See Statement of Contracting Officer attached) The case law is clear that "An offer is late if it does not arrive in the office designated in the solicitation by the time specified in the solicitation. See <u>Kessler International, B-296294</u>, June 30, 2005, <u>2005 CPD 127</u>, citing <u>Sencland CDC Enters., B-252796, B-252797</u>, July 19, 1993, <u>93-2 CPD para 36 at 3</u>. The same case citing <u>Caddell Constr. Co., Inc., B-280405</u>, Aug. 24, 1998, <u>98-2 CPD para 50 at 6</u>, stated that "An offer

that arrives late may only be considered if it is shown that the paramount reason for the late receipt was improper government action, and where consideration of the proposal would not compromise the integrity of the competitive procurement process." DHS does not staff the GSA bid room-nor would it have done so on December 19, 2006, as the solicitation amendment was clear on the delivery location. Improper government conduct, such as mishandling, must be by the "procuring agency" personnel. See The Castle Group, B-297853, March 21, 2006, 2006 CPD 55. That case further notes that "Where late receipt results from the failure of an offeror to reasonably fulfill its responsibility for ensuring timely delivery to the specified location, the late offer may not be considered." I further note for the GAO that the time/date receipt reflects a time of 9:46 a.m. EST on December 19, 2006 at the 7th and D location. Delivering the proposal to the specified location would have required further travel and time by the protestor. One could reasonably conclude that the protestor chose to make a timely delivery to the wrong location instead of a late delivery to the correct location. Unfortunately for the protestor, either course of action under the law leads to the same conclusion--a late proposal, that absent government mishandling or improper conduct, may not be considered for award.

DHS security processes require such documentation to undergo screening at the Murray Lane facility prior to delivery within the Department. The Contracting Officer made it clear that proposals were to go to the Murray Lane location in the Request for Proposal (RFP) Amendment 0003. Her expectation based on that clear guidance was delivery to the specified location. (See Contracting Officer's Statement attached)

DHS hereby requests that the GAO dismiss this protest on the grounds that the protestor is not an interested party as previously stated **and** based on the additional facts that clearly reflect delivery by the protestor to the wrong location. As a result of that erroneous delivery, the proposal is late. The proposal was never submitted to the specified location set forth in the RFP in a timely manner. It was not "late" because of any improper action of DHS personnel and thus, will not be considered for award.

For the reasons set forth herein and in the legal memorandum contained in the agency record, this protest should be dismissed.

If you have any questions or require further information, I am available at 202-477-3529 or rose.anderson@dhs.gov.

Sincerely,

Rose J. Anderson

Rose J. Anderson
Counsel for the Agency

Enclosures:
Contracting Officer Statement
Copy of receipt from GSA Office
Copy of binder cover reflecting RFP proposal delivery location

Copy furnished by fax:
Mr. David Taylor, Esq., counsel for Shirlington Transportation & Limousine, Inc.
Mr. William T. Welch, Esq., counsel for Transcom, Inc.

**Contracting Officer Victoria Short Statement of Relevant Facts**

**Matter of: Shirlington Limousine & Transport, Inc.**
**File No.: B-299241**
**Agency: United States Department of Homeland Security**

## BACKGROUND

The Office of Procurement Operations (OPO) submitted the agency report to the General Accountability Office (GAO) responding to the Shirlington Limousine & Transport, Inc. protest on January 8, 2007. A copy of the report was to be delivered on January 9, 2007 to Mr. David J. Taylor, counsel for the protestor, and Mr. William T. Welch, counsel for Transcom, Inc., as an Intervenor.

## CHRONOLOGY OF EVENTS

1. As part of the agency record, the agency requested dismissal of the protest based on the fact the protestor did not submit a proposal. On January 09, 2007, Rose J Anderson, Counsel for the Agency received a phone call from the protestor's counsel stating that there was a timely proposal submitted by his client Shirlington Limousine & Transport, Inc. and he would provide evidence of the delivery. Prior to that call, I had no evidence that a proposal had been submitted by the protestor.

2. On January 10, 2007, on the way out the building to attend a luncheon, I decided to stop by a Bid Room located on the first floor of the General Services Administration (GSA) building at 7th & D Street Southwest, Washington DC. This GSA building houses both GSA functions/personnel and some DHS functions/personnel, among them, OPO. At that point I discovered through a conversation with a Mr. Carl V. Campbell that Shirlington Limousine & Transport, Inc. had delivered the proposal and copies to the wrong location. Mr. Campbell is the Chief, Operations Branch and Procurement Management Division for GSA. I did not accept the late proposal.

3. Once again, I reviewed the specific provisions related to proposal submission that were incorporated into the RFP. DHS security processes require that documents such as proposals, small packages and mail undergo a screening process at the Murray Lane facility prior to distribution within DHS facilities. Amendment 0003 dated December 8, 2006 in addition to adding transition language to the Performance Work Statement, also specified the precise date, time and location for submission of proposals. The date and time of proposal submission was extended until December 19, 2006 10:00 am. EST. Regarding the location, a potential Offeror had in fact, submitted a question requesting clarification of the location of the proposal submission. The question was as follows:

*"Question: Regarding solicitation. The SF 1449, 15 states "Deliver To Department of Homeland Security Office of Procurement ops (DO), 245 Murray Lane, Building 410, Washington DC 20528. @ page 38 the delivery address is 7th and D Street, SW. Please clarify""*

***"Government Response: Change the delivery address @ page 38 to read:***
*Department of Homeland Security Office of Procurement Operations, 245 Murray Lane, Building 410, Washington DC 20528. ATTN Frank Rumph.*

Amendment 0003 quoted above was posted on the Federal Business Opportunity website on December 08, 2006. (Amendment 0003 is located at Tab 9 of the Agency Record.)

4. As the DHS Contracting Officer, I was fully expecting delivery of all proposals in accordance with Amendment 0003 of the solicitation. There were no DHS employees at the location, nor were any prior arrangements made with GSA personnel to accept any proposals in response to this RFP.

I declare under the penalty of perjury that the foregoing is true and correct.

Victoria D. Short
Contracting Officer
DHS Office of Procurement Operations
Departmental Operations Division

January 11, 2007
DATE

| BID RECEIPT | 1. Date & Time Bid Received. |
| --- | --- |
| 2. IFB or Project No. HSHQDC07R 00009 | RECEIVED 2006 DEC 19 A 9:48 GSA-NCR BID ROOM |
| 3. Name & Address of Firm IFB/SFO Received From. | |
| 4. Signature of Individual Hand Delivering Bid *(Represeniative or Firm or Messenger Service's Name and Address).* | |
| *This to certify that the Business Service Center, Bid Room, Room 1701, National Capital Region received a hand delivered Bid on the date and time shown above.* | 5. Signature of BSC Employee Accepting Bid. [signature] |

General Services Administration NCR-1275 (11-89)

Received
January 10, 2007
12:50 PM
[signature]
Contracting officer

# DHS-WIDE TRANSPORTATION SERVICES

## Solicitation No: HSHQDC-07-R-00009

# BUSINESS PROPOSAL

## VOLUME I

**Submitted To:**
Department of Homeland Security
Office of Procurement Operations
245 Murray Lane
Building 410
Washington, DC 20528
ATTN: Frank Rumph

**Submitted By:**
Shirlington Limousine & Transportation, Inc.
717 D Street, NW
Suite 300
Washington, DC 20004

December 19, 2006

Received
January 10, 2007
12:50PM
, Contracting officer

# EXHIBIT E

**Contracting Officer Victoria Short Statement of Relevant Facts**

**Matter of: Shirlington Limousine & Transport, Inc.**
**File No.: B-299241**
**Agency: United States Department of Homeland Security**

I am the Department of Homeland Security (DHS) Contracting Officer (CO) responsible for Solicitation HSHQDC-07-R-00009, DHS-Wide Transportation Services.

**CHRONOLOGY OF EVENTS**

**1. Background**

In early June 2006, the U.S. Department of Homeland Security, Office of Procurement Operations (OPO), Departmental Operations Division, in conjunction with the DHS Office of the Chief Administrative Officer, the Chief Procurement Officer and the Strategic Sourcing and Acquisition Systems Office identified a new requirement for DHS-Wide shuttle and executive sedan/courier transportation services. This requirement is consistent with Office of Management & Budget's requirement that all civilian agencies implement strategic sourcing initiatives to improve federal procurement practices. Consistent with this requirement and DHS strategic sourcing implementation, Commodity Councils work with DHS stakeholders to identify requirements for supplies/services and to develop strategies which create economies of scale for optimized service levels and total cost of ownership efficiencies. DHS is consolidating its transportation support operations to improve the quality of services, promote the more efficient and effective distribution of resources to meet the diverse and widely disbursed transportation needs in the Washington Metropolitan Area. Of significant concern was ensuring that agency's security requirements for all its components, some with extremely sensitive missions, would be fulfilled. In addition, consolidating transportation support operations will reduce the administrative burden and maximize the cost effectiveness of DHS transportation activities.

**2. Request for Information**

On June 23, 2006 the OPO issued a Request for Information (RFI) on Federal Business Opportunity (FedbizOpps) to garner industry support and to determine the level of interest in a DHS-Wide transportation services contract. The RFI required interested firms to submit a capability package identifying the following: **a.** Core services, including NAICS codes **b.** key personnel **c.** corporate experience, and a listing of existing or previous contracts (with points of contact) for similar-type services **d.** Type of Business (i.e., Large Business, Small Business veteran owned, 8(a), woman-owned, etc.) **e.** Current facility security clearance level for overnight parking of vehicles and busses and **f.** Drivers with suitability determinations. OPO received responses to the June 23, 2006 RFI from eleven small businesses.

**Contracting Officer Victoria Short Statement of Relevant Facts**

On October 10, 2006 the OPO issued an amendment to the June 23, 2006 RFI on FedbizOpps. The RFI amendment was issued for informational purposes only. The RFI informed interested parties that responded to RFI06-23-06 that the DHS acquisition approach for the planning of a comprehensive contract to meet all DHS and component transportation needs for shuttle and sedan service will require that all interested parties have a Defense Industrial Security Clearance Office (DISCO) cleared Contractor facility at time of award.

**3. Solicitation**

On November 20, 2006, OPO posted the Request for Proposal (RFP) on FedbizOpps for the DHS-Wide Transportation services requirement. The RFP stated that DHS intended to acquire these services using competitive small-business set-aside procedures and that the solicitation will result in DHS awarding multiple awards, fixed unit price, indefinite delivery/indefinite quantity type contracts with a base period of one year and four option periods of one year each to be exercised at the discretion of the government. The RFP stated that the awardees would be required to provide all management, supervision, manpower, training, communication equipment, supplies, licenses, permits, certificates, insurance, and vehicles to include the storage of the vehicles to accomplish the required transportation services. The total estimated value for this requirement is **** for the five year period. Prospective Offerors were given the opportunity to submit questions pertaining to the RFP via e-mail initially on or before November 28, 2006. The RFP also stated that the prospective Offerors would be given a second opportunity to submit additional questions, if any, after the pre-proposal conference. The additional questions were due December 5, 2006. Initially the due date for the offerors' proposals was December 13, 2006; however, through the issuance of an amendment to the RFP the due date was revised to extend the due date to December 19, 2006.

**4. Amendments to Solicitation**

**Amendment 0001:** On November 28, 2006 an amendment was issued to provide information for the pre-proposal conference and to incorporate the applicable Department of Labor wage determination for solicitation HSHQDC-07-R-00009.

**Amendment 0002:** On December 4, 2006 an amendment was issued to provide the power point slides from the pre-proposal conference held on December 1, 2006.

Amendment 0002 also provided the Government's response to questions submitted in response to solicitation HSHQDC-07-R-00009 and informed potential Offerors that a subsequent amendment will be issued to address additional questions.

**Amendment 0003:** On December 8, 2006 an amendment was issued to add transition language to the PWS and provide the Government's response to questions submitted in response to solicitation HSHQDC-07-R-00009.

The time and date for proposal submission was extended until December 19, 2006 10:00 am. Eastern Standard Time.

**5. Pre-proposal Conference**

On December 1, 2006 OPO held a pre-proposal conference. The pre-proposal conference was designed to provide potential offerors with the background of the requirement and the strategic source initiative, address information that potential offerors would need to know regarding the preparation of their proposals and provide an overview of the necessary security requirements. A total of twelve vendors attended the conference. Additional questions after the pre-proposal conference were due December 5, 2006, 10.00 a.m. EST. Two representatives from Shirlington Limousine & Transport, Inc. attended the pre-proposal conference. Shirlington Limousine & Transport, Inc did not submit any questions; however, on December 7, 2006 they submitted the following e-mail request to the Contract Specialist:

*"Per our conversation, please fax a copy of the attendees at the pre-proposal conference last Friday, Dec. 1, 2006, to 202-248-0722."*

**6. Protest**

On December 11, 2006, OPO received correspondence from Counsel representing Shirlington Limousine & Transport, Inc. informing DHS that it had filed a GAO pre-award protest on the DHS-Wide Transportation solicitation number HSHQDC-07-R-00009.

On December 14, 2006, OPO received official notification from United States General Accountability Office that a pre-award protest was filed against the DHS-Wide Transportation solicitation number HSHQDC-07-R-00009.

**7. Proposals**

On December 19, 2006, Office of Procurement Operations received nine proposals in response to the solicitation. Shirlington Limousine & Transport, Inc. did not submit a proposal. The offers were secured and the evaluations postponed pending the results of the protest.

**8. A best estimate of the contract value**

The best estimate of the contract value for a 5 year period is ****.

**9. Statutory stay or suspension of performance is in place**

There is no statutory stay or suspension of performance in place; however OPO has voluntarily postponed the evaluation of proposals pending the results of the protest.

**Contracting Officer Victoria Short Statement of Relevant Facts**

I declare under the penalty of perjury that the foregoing is true and correct.

January 8, 2007
DATE

Victoria D. Short
Contracting Officer
DHS Office of Procurement Operations
Departmental Operations Division