# EXHIBIT 5

GAO
Accountability • Integrity • Reliability
United States Government Accountability Office
Washington, DC 20548

Comptroller General
of the United States

# Decision

**Matter of:** Shirlington Limousine & Transportation, Inc.

**File:** B-299241.2

**Date:** March 30, 2007

David J. Taylor, Esq., Spriggs & Hollingsworth, for the protester.
Rose J. Anderson, Esq., Department of Homeland Security, for the agency.
Kenneth Kilgour, Esq., and Christine S. Melody, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

**DIGEST**

Protest challenging agency's rejection of the protester's proposal as late is denied where the late receipt of the proposal was not caused by the agency and the government did not have receipt and control of the proposal at the government installation designated for receipt of proposals prior to the submission deadline.

**DECISION**

Shirlington Limousine & Transportation, Inc. protests the rejection as late the proposal it submitted in response to request for proposals (RFP) No. HSHQDC-07-R-00009, issued by the Department of Homeland Security (DHS) for agency-wide transportation services. The protester argues that the agency engaged in wrongful action that resulted in the late submission of the protester's proposal or, alternatively, that the government had receipt and control of the proposal prior to the submission deadline.

We deny the protest.

Shirlington is an incumbent contractor performing a portion of the transportation services to be procured under this RFP. The protester was awarded its first contract with DHS for these services in April 2004 and the current contract in October 2005. The agency issued the subject RFP for Washington area shuttle bus and sedan services on November 20, 2006, instructing offerors that proposals were to be received by 2 p.m. Eastern Standard Time (EST), December 12, and should be submitted to the following address:

> Frank Rumph, Contract Specialist
> OPO Headquarters Procurement Division
> 7th & D Street, SW
> Washington, DC 20024

RFP at 38.

A different address for delivery of proposals was listed on the Standard Form 1449, Box 15 of the RFP, as follows:

> Department of Homeland Security
> Office of Procurement Ops. (DO)
> 245 Murray Lane
> Building 410
> Washington DC 20528

RFP at 1.

On December 8, the agency issued amendment 3 which, in part, included the agency's answers to questions raised by offerors. One question noted the two different delivery addresses listed in the RFP and sought clarification. The agency responded as follows:

> Change the delivery address @ page 38 to read: Department of Homeland Security Office of Procurement Operations, 245 Murray Lane, Building 410, Washington DC 20528. ATTN Frank Rumph.

RFP amend. 3, at 2. Amendment 3 also extended the deadline for submitting proposals to December 19 at 10 a.m. EST.

The contract specialist states that on the morning that offers were due he received two telephone calls from prospective offerors requesting directions to the proposal delivery address of 245 Murray Lane, and that he told both callers that the delivery address was a building located on the Anacostia Naval Station. Also on that morning, the protester's chief operating officer (COO) took the protester's proposal to a "bid room" in the building at 7th and D Streets listed on page 38 of the original RFP. The protester states that this building houses the DHS Office of Procurement Operations headquarters as well as some offices of the General Services Administration. The protester also states that previously it had delivered its proposal to that address in connection with the procurement for one of its two prior contracts with DHS for the services here. According to the protester, its COO asked the person in the bid room if this was the correct place to submit the proposal, and her response was yes. The COO was given a signed receipt, with the correct solicitation number listed, stamped: "RECEIVED, 2006 DEC 19 A 9:46:20 GSA-NCR BID ROOM." Protest, exh. C. The agency maintains that it was unaware that the protester had submitted a proposal under the RFP here until it was informed of the

submission by the protester on January 9, 2007. The contracting officer states that, having been told that the protester had submitted a proposal, she stopped by the bid room at 7th and D Streets on January 10, saw the proposal, but did not accept it or remove it from the bid room.

Shirlington acknowledges that its proposal was delivered to an incorrect address. The protester argues, however, that its proposal nevertheless should be accepted because it was the government's wrongful action that caused its proposal to be late or, alternatively, its proposal was received and under the government's control prior to the time set for receipt of proposals. See Protest at 5-6.

It is an offeror's responsibility to deliver its proposal to the proper place by the proper time, and late delivery generally requires rejection of the proposal. Federal Acquisition Regulation (FAR) § 15.208; The Staubach Co., B-276486, May 19, 1997, 97-1 CPD ¶ 190 at 3. However, a hand-carried proposal that arrives late may be considered if improper government action was the paramount cause for the late submission, and where consideration of the proposal would not compromise the integrity of the competitive procurement process. Caddell Constr. Co., Inc., B-280405, Aug. 24, 1998, 98-2 CPD ¶ 50 at 6. Improper government action in this context is affirmative action that makes it impossible for the offeror to deliver the proposal on time. Id. Here, as explained below, we find no basis to conclude that improper government action caused the late submission of Shirlington's proposal.

The record shows that once the inconsistency in the delivery addresses listed in the original RFP was brought to the agency's attention, the agency issued an amendment clarifying where proposals were to be delivered. Thus, there simply is no support for the protester's assertion that the agency's failure "to provide sufficiently clear delivery instructions," Comments at 3, caused Shirlington to submit its bid late.[1] The protester argues that its past pattern of dealing with the agency, which made it unique among the offerors, led it to conclude that the proper delivery address was the bid room at 7th and D Streets. Whatever the protester may have done to satisfy proposal delivery requirements in prior procurements does not excuse the protester from its burden to ensure timely delivery of its proposal at the location specified in the solicitation. See Schmid & Kalhert GmBH & Co. KG, B-233467, Feb. 13, 1989, 89-1 CPD ¶ 148 at 3. In short, there is nothing in the record showing that any affirmative government action deprived the protester of the ability to make proper delivery of its proposal.

---

[1] To the extent the protester challenges the delivery instructions themselves, this ground of protest is untimely. Here, any alleged flaws in the delivery instructions constituted a defect in the solicitation that was apparent prior to the time for submitting proposals and had to be protested prior to that time, which Shirlington did not do here. See Bid Protest Regulations, 4 C.F.R. § 21.2(a)(1) (2006).

The protester also asserts that the agency treated offerors unfairly because DHS employees "may have provided more explicit instructions to other offerors without sharing this information with Shirlington." Comments at 3. As explained above, two offerors received minimal assistance with directions to the proposal delivery locations after calling the contract specialist on the proposal due date. That a contracting official or other agency employee, in response to an inquiry from a prospective offeror, provides that offeror with directions to the proposal delivery location does not form a valid basis of protest. See Aztec Dev. Co., B-256905, July 28, 1994, 94-2 CPD ¶ 48 at 4 (noting that courier could have called the contracting officer for additional directions to the delivery location). The protester, of course, could have availed itself of the same opportunity to obtain directions.

The protester asserts, alternatively, that its proposal was received and under the government's control prior to the submission deadline so that an exception to the rule that late proposals must be rejected applies. In this regard, FAR § 15.208(b)(1) states that any proposal that

> is received at the designated Government office after the exact time specified for receipt of proposals is "late" and will not be considered unless it is received before award is made, the contracting officer determines that accepting the late proposal would not unduly delay the acquisition; and—
>
> * * * * *
>
> (ii) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of proposals and was under the Government's control prior to the time set for receipt of proposals . . . .

This exception may apply, if all other conditions are also met, when a proposal is late but at the office designated for receipt of proposals, and under the government's control, before the time set for receipt of proposals. See States Roofing Corp., B-286052, Nov. 8, 2000, 2000 CPD ¶ 182 at 4-5. This exception clearly does not apply here given that the proposal was not, in fact, at any time delivered to "the designated Government office," i.e., the address listed in amendment 3 of the RFP; in fact, it was delivered to an entirely different location.

The protest is denied.

Gary L. Kepplinger
General Counsel