ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

FILED
APR - 4 2007
U.S. COURT OF FEDERAL CLAIMS

SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.
717 D Street, N.W., Suite 300
Washington, D.C. 20004

Plaintiff,

v.

THE UNITED STATES
SERVE:
Attorney in Charge of Litigation
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W., 8th Floor
Washington, D.C. 20530

Defendant.

No. 07-220 C

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER and/or PRELIMINARY INJUNCTION**

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., 9th Floor
Washington, D.C. 20005
Ph: (202) 898-5800/Fx: (202) 682-1639

Mr. Taylor's Direct Dial: (202) 898-5838
davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

April 4, 2007

OF COUNSEL:
William J. Spriggs
Katherine A. Schultz
Spriggs & Hollingsworth

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS and OUTLINE OF ARGUMENT ..... 2

III. ARGUMENT ..... 4

A. Shirlington is Likely to Prevail on the Merits ..... 4

1. On their Face, the Solicitation and the Contracting Officer's Action are in Violation of Federal Procurement Law and Regulations ..... 5

2. The U.S. Small Business Administration also Supports Plaintiff's Position on the Issue of a HUBZone Set-Aside (Count I) ..... 7

3. DHS Erred by Failing to Accept Shirlington's Proposal Under the Small Business Set-Aside ..... 7

a. The Case Law Exception to the Filing Requirements Applies to the Facts of This Case. ..... 8

i. DHS Engaged in Wrongful Action, Resulting in an Improper Submission ..... 9

ii. The Integrity of the Procurement Process Would be Preserved if Shirlington's Proposal was Deemed Timely. ..... 10

b. The Statutory Exception to the Filing Requirements also Applies to the Facts of this Case. ..... 10

i. The Proposal was Received Before the Award and Accepting the Bid Would Not Delay the Acquisition ..... 11

ii. The Proposal is in the Agency's control ..... 11

4. DHS Breached the Implied Duty of Good Faith and Fair Dealing ..... 12

B. Shirlington Will be Irreparably Harmed if this Procurement is not Enjoined ..... 15

C. The Harm Suffered by Shirlington if Injunctive Relief is Denied Outweighs the Potential Harm to DHS ..... 16

D. The Public Interest Will be Served by Granting Preliminary and/or Temporary Injunctive Relief ..... 17

IV. CONCLUSION AND RELIEF REQUESTED ..... 17

# TABLE OF AUTHORITIES

## Cases

*Alion Sci. and Tech. Corp. v. United States*, 74 Fed. Cl. 372, 376 (2006) .................................. 17

*Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 269 (1997) .................................................. 17

*Comprehensive Health Servs., Inc. v. United States*, 70 Fed. Cl. 700, 738 (2006) ...................... 12

*CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004) ........................................ 17

Econ, Inc., B-222577, July 28, 1986, 86-2 CPD ¶ 119 ................................................................ 9

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) ..................................................... 4

Hosp. Klean of Texas, Inc., B-295836, April 18, 2005, 2005 CPD ¶ 185 ..................................... 9

*Int'l. Res. Recovery, Inc. v. United States*, 60 Fed. Cl. 1, 8 (2004) ............................................. 16

Integrated Support Sys., Inc., B-283137.2, Sept. 10, 1999, 99-2 CPD ¶ 51 .................................. 9

*Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974) ................................ 12

*Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993) ................................................... 15

MCS Portable Restroom Serv., B-299291, March 28, 2007, 2007 CPD ¶ * ................................. 5

*PGBA, LLC. v. United States*, 57 Fed. Cl. 655, 664 (2003) ........................................................ 16

*Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 716-17 (2006) ........................... 15

Rochester Optical Mfg. Co., B-292247, B-292247.2, Aug. 6, 2003, 2003 CPD ¶ 138 .................. 6

Select, Inc., B-245820, Jan. 3, 1992, 92-1 CPD ¶ 22 .......................................................... 10, 11

SWR, Inc., B-294266, Oct. 6, 2003, 2003 CPD ¶ 219 ................................................................. 6

*Textron, Inc. v. United States*, 74 Fed. Cl. 277, 287 (2006) ......................................................... 4

Tishman Constr. Corp., B-292097, May 29, 2003, 2003 CPD ¶ 94 ............................................ 10

*Trustees of Indiana Univ. v. United States*, 618 F.2d 736, 739 (Ct. Cl. 1980) .............................. 5

*United Payors & United Providers Health Servs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (2003) ........................................................................................................................... 16

*Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500, 514 (2005) .................................... 16

**Statutes & Regulations**

15 U.S.C. § 657a(b)(2) .......... 2, 5

28 U.S.C. § 1491(b)(4) .......... 4

5 U.S.C. § 706 .......... 4

FAR § 13.102 .......... 6

FAR § 15.208(a) .......... 8

FAR § 15.208(b)(1) .......... 8

FAR § 15.208(b)(1)(ii) .......... 10

FAR § 19.1305 .......... 2, 3, 5, 6

**Other Authorities**

Restatement (Second) of Contracts § 205 .......... 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

*Bid Protest*

| | | |
|---|---|---|
| SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.<br>717 D Street, N.W., Suite 300<br>Washington, D.C. 20004<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br>SERVE:<br>Attorney in Charge of Litigation<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>1100 L St., N.W., 8th Floor<br>Washington, D.C. 20530<br><br>Defendant. | ) | No. __________ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER and/or PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This is a case of first impression in this Court. While the Court of Federal Claims has heard cases on whether companies are validly determined to be Historically Underutilized Business Zone Small Business Concerns ("HUBZone SBCs" or "HUBZone companies") and whether the HUBZone price evaluation preference ("PEP") applies, it has not directly decided the parameters of the statute's and regulations' mandate that contract opportunities shall be set aside for HUBZone companies under certain conditions. Plaintiff Shirlington Limousine & Transportation, Inc. ("Shirlington") respectfully requests a temporary restraining order and/or a

preliminary injunction enjoining the U.S. Department of Homeland Security ("DHS") from proceeding with the award of a contract under Solicitation Number HSHQDC-07-R-00009 for shuttle bus and sedan transportation services to DHS employees within the District of Columbia and surrounding areas pending the outcome of these proceedings. Shirlington, a duly certified HUBZone company, which currently has a contract with DHS for precisely these types of services (a contract which was originally awarded as a HUBZone contract) has, out of an abundance of caution, submitted a proposal under the small business set aside, but DHS has refused to accept that proposal. Finally, and sadly, it appears that DHS' plan to cancel the current contract and to award to someone other than Shirlington under an illegal small business set aside, results from the political pressure DHS is under, which has led it to violate its duty of good faith and fair dealing.

## II. STATEMENT OF RELEVANT FACTS[1] and OUTLINE OF ARGUMENT

Central to Plaintiff's complaint is DHS's failure to set aside the current Solicitation for competition among qualified Historically Underutilized Business Zone ("HUBZone") small business concerns. The failure to set-aside this contract for HUBZone small businesses is a clear violation of 15 U.S.C. § 657a(b)(2) and Federal Acquisition Regulation ("FAR") § 19.1305(a), (b).

DHS issued the current Solicitation on November 20, 2006 as a request for proposals set aside for competition among small businesses. Under the Solicitation, the winning contractor will provide transportation services to DHS employees within the Washington, D.C. metropolitan area. The contract to be awarded under the Solicitation will bear resemblance to an existing contract (the "Existing Contract") which Shirlington currently has with DHS. The

---

[1] All relevant facts are set forth in detail in Shirlington's Complaint.

Existing Contract was originally awarded on October 25, 2005, for a period of five years, one base year and four one year option years. DHS has since modified the contract and Shirlington began performing a 9-month option period, called Option 1A, on October 27, 2006. Option period 1A ends on July 26, 2007 which potentially will be followed by an additional 3-month option period, Option 1B.

The Historically Underutilized Business Zone Statute and federal procurement regulations mandate that a Solicitation *shall* be set-aside for HUBZone small business concerns when the contracting officer has a "reasonable expectation that (1) Offers will be received from two or more HUBZone small business concerns; and (2) Award will be made at a fair market price." FAR § 19.1305 (a), (b). The DHS contracting officer failed to make a reasonable determination that she could not reasonably expect to receive offers from two or more HUBZone small businesses. Accordingly, the Solicitation was improperly set aside for small businesses, rather than for the sub-set of HUBZone small business concerns.

In addition, despite confusing instructions included in the Solicitation and misleading statements made by Government contracting personnel, DHS has steadfastly refused to accept Shirlington's proposal under the Solicitation. Shirlington submits that this is done in violation of federal procurement statutes, regulations and policies.

Furthermore, given the facts set forth in Count III of the complaint, and taken as a whole, the government's actions demonstrate a breach of the implied duty of good faith and fair dealing and explain why DHS has taken such pains to cancel a perfectly valid and well functioning contract in favor of a procurement policy designed to preclude Shirlington and other HUBZone companies from having the benefit their status is designed to afford. These companies have placed their principal offices in HUBZones and have made sure that at least 35% of their

employees reside in a HUBZone in reliance on the government's promise of the solicitation of and award to such HUBZone companies in appropriate cases. DHS is illegally attempting to circumvent that statutory mandate, apparently because of the political pressure it is getting due to the Duke Cunningham scandal, which has nothing to do with Shirlington.

## III. ARGUMENT

Plaintiff submits that it meets all of the standards for the issuance of a temporary restraining order and/or preliminary injunctive relief. Plaintiff is required to demonstrate: (1) substantial probability that Plaintiff will succeed on the merits; (2) irreparable harm to Plaintiff if injunctive relief is not granted; (3) the balance of hardships tips in the Plaintiff's favor; and (4) the public interest is served by granting the relief. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 287 (2006).

A review of these factors indicates that temporary or preliminary injunctive relief is warranted in the instant action.

### A. Shirlington is Likely to Prevail on the Merits

Shirlington will prevail on the merits of this case by demonstrating that DHS' decision not to set-aside the Solicitation for HUBZone small business concerns was arbitrary and capricious, an abuse of discretion, and clearly violative of federal procurement law and regulations. 28 U.S.C. § 1491(b)(4), referencing the standards set forth in 5 U.S.C. § 706. In addition, Shirlington will also prevail on the merits by demonstrating that DHS erred in refusing to accept its proposal as timely filed. Finally, Shirlington will also lay bare facts evidencing the fact that DHS' decision to replace Shirlington's Existing Contract, which has four years to run, with outstanding service to DHS, was motivated by DHS' succumbing to political pressure and that the solicitation was therefore issued in breach of the implied duty of good faith and fair dealing.

**1. On their Face, the Solicitation and the Contracting Officer's Action are in Violation of Federal Procurement Law and Regulations**

When contracting for goods and services DHS must comply with the provisions of the HUBZone Act ("Act") as implemented in FAR § 19.1305. The Act specifically states that a "contract opportunity *shall* be awarded . . . on the basis of competition restricted to qualified HUBZone small business concerns" where certain requirements are met. 15 U.S.C. § 657a(b)(2) (emphasis supplied)[2]. Any federal agency, including DHS, must set aside an acquisition for competition among HUBZone small business concerns where the contracting officer has a "reasonable expectation that (1) Offers will be received from two or more HUBZone small business concerns; and (2) Award will be made at a fair market price." FAR § 19.1305(a), (b); 15 U.S.C. § 657a(b)(2).

"[A] regulation must be interpreted to harmonize with and further and not conflict with the objective of the statute it implements." MCS Portable Restroom Serv., B-299291 at 5, quoting *Trustees of Indiana Univ. v. United States*, 618 F.2d 736, 739 (Ct. Cl. 1980). The plain meaning and intent of the HUBZone Act is that all solicitations meeting these requirements must be set-aside. The FAR statute is consistent with the SBA statutory and regulatory language and confers a similar mandatory requirement.

Shirlington contends that DHS' decision not to set aside the Solicitation for HUBZone small business concerns was arbitrary, capricious, and not in accordance with the law and

---

[2] GAO has used unequivocal terms to describe the mandatory nature of the set-aside program. *See* MCS Portable Restroom Serv., B-299291, March 28, 2007, 2007 CPD ¶ * at p. 4 ("We acknowledge that, unlike the HUBZone and small business set-aside programs, which generally *require* set-asides if two or more HUBZone concerns or small-business concerns are interested in submitting offers and award is expected to be made at a fair market price, *see* FAR sections 19.502-1, 19.1305, the decision to make a S[ervice] D[isabled] V[eteran]-O[wned] S[mall] B[usiness] C[oncern] set-aside is discretionary with the contracting officer") (emphasis supplied).

regulation as described above. Pursuant to the HUBZone Act and FAR § 19.1305(a), (b), an agency "must make reasonable efforts to ascertain whether it will receive offers from at least two HUBZone small business concerns with the capability to perform the work." SWR, Inc., B-294266, Oct. 6, 2003, 2003 CPD ¶ 219 at 3. An agency's assessment of whether a HUBZone set aside is required "must be based on sufficient facts so as to establish its reasonableness." *Id.* (citing Rochester Optical Mfg. Co., B-292247, B-292247.2, Aug. 6, 2003, 2003 CPD ¶ 138 at 5). DHS' efforts and analysis of whether it would receive two or more offers from HUBZone small business concerns were unreasonable, and therefore contrary to law and regulations.

In particular, DHS erred when it conducted limited and flawed market research prior to issuing the Solicitation. When initially researching all potential HUBZone offerors, DHS failed to consult the Central Contractor Registration database, which, pursuant to FAR § 13.102, a contracting officer should use as its "primary source[] of vendor information." FAR § 13.102. DHS also failed to consult the Small Business Administration's database, PRO-NET, another source for information regarding potential HUBZone offerors. A more recent search for contractors under the applicable NAICS codes reveals over 28 HUBZone contractors. In addition, DHS also improperly used access to a Defense Industrial Security Clearance Office (DISCO) facility as a prerequisite in assessing the capabilities of potential vendors, when that requirement does not even appear in the Solicitation.

DHS also erred in the analysis of the results of this research, causing it to incorrectly conclude that it could not reasonably anticipate receiving offers from two or more HUBZone small business concerns. For example, DHS improperly assumed that the HUBZone firms that responded to their non-mandatory Request for Information ("RFI") were the only ones that would be interested in the Solicitation it issued five months later. DHS also improperly assessed

the capability of the RFI responders to perform the contract at the time they submitted such responses, rather than at the time of contract award. Finally, DHS improperly ignored the innovative ways in which HUBZone small business concerns could satisfactorily meet the requirements of the solicited contract.

**2. The U.S. Small Business Administration also Supports Plaintiff's Position on the Issue of a HUBZone Set-Aside (Count I)**

Shirlington previously filed a protest of this Solicitation with the U.S. Government Accountability Office ("GAO"). The U.S. Small Business Administration ("SBA") asked to review and provide comments on that protest. The comments provided by the SBA directly support Plaintiff's contention that the Agency erred in not setting the Solicitation aside for a HUBZone small business concern. In particular, the SBA Comments stated "[b]ased upon our analysis of the facts, we believe that the RFP, issued as a small business set-aside, should have been set aside for HUBZone small businesses and the protest should be sustained." *See* SBA Comments to Agency Report, B-299241, Jan. 22, 2007 (Complaint Exhibit 2) (emphasis supplied). SBA is the federal agency charged with aiding, counseling, assisting and protecting the interests of small businesses. In particular, SBA manages the HUBZone program. Its comments demonstrate the strength of the Plaintiff's argument and its likelihood of success on the merits of this action.

**3. DHS Erred by Failing to Accept Shirlington's Proposal Under the Small Business Set-Aside**

In order to be eligible for award of a contract under the Solicitation as issued, in the event its protest of the failure to set aside for HUBZone small business concerns is unsuccessful, Shirlington prudently submitted a proposal on December 19, 2006. For reasons set forth in the Complaint, DHS refused and still refuses to accept that proposal. In the event the Court agrees with Plaintiff that the solicitation should have been set-aside for HUBZone small business

concerns, this Count II and Count III will become moot as the solicitation will have to be canceled and re-issued as a HUBZone set-aside, in which case Shirlington will have to be allowed to submit a new proposal under the HUBZone set aside procurement. If, however, the Court does not agree with the allegations of Count I, Shirlington should nevertheless be allowed to compete under the existing Solicitation for award of a small business contract.

It is clear that the instructions for delivering proposals under the Solicitation were inartfully drafted. This is evidenced by the fact that DHS subsequently issued an amendment to clarify the delivery location. Shirlington submitted its proposal on December 19, 2006 to 7th & D Streets, N.W., Washington, D.C., the location of the Bid Room where it had previously filed numerous documents. It should be noted that the entire DHS Procurement Operations Headquarters is located in that building, as are some GSA offices. Shirlington only learned that it had mis-delivered its proposal through the Agency Record submitted in response to the GAO protest previously filed in this action.

Under normal circumstances, a proposal, which is delivered late or at the wrong place, is justifiably unacceptable. *See* FAR § 15.208(a) and FAR § 15.208(b)(1). However, two exceptions to this general rule have been established, either of which applies to the facts of this case.

**a. The Case Law Exception to the Filing Requirements Applies to the Facts of This Case.**

The case law exception to the timeliness requirements states, "a hand-carried proposal that arrives late may be considered if improper government action was the paramount cause for the late submission, and where consideration of the proposal would not compromise the integrity of the procurement process. . ." Hosp. Klean of Texas, Inc., B-295836, April 18, 2005, 2005

CPD ¶ 185 at 3. Improper government action is defined as affirmative action that makes it impossible for the offeror to deliver the proposal on time. *Id.*

Shirlington contends that DHS should be required to accept Shirlington's proposal as properly filed because (i) the agency engaged in wrongful action which resulted in the late submission of its proposal, and (ii) consideration of the late proposal will not compromise the integrity of the competitive procurement process. *See id.*

**i. DHS Engaged in Wrongful Action, Resulting in an Improper Submission**

Improper government action in this context is defined as affirmative action that makes it impossible for the offeror to deliver its proposal on time. Econ, Inc., B-222577, July 28, 1986, 86-2 CPD ¶ 119. In this case, the government's failure to provide an adequate description of the multiple steps necessary to submit the proposals sought under the Solicitation was the paramount cause for the late receipt of Shirlington's proposal.

In addition, further investigation is necessary to determine if any other offerors were given more explicit directions or guidance regarding the submission of proposals. Investigation and discovery is also needed to determine the precise set of facts surrounding the submission of any and all proposals received in response to the Solicitation.

Shirlington acknowledges that even in cases where the late receipt of a proposal was caused, in part, by erroneous government action, a late proposal will not be considered if the offeror significantly contributed to the late receipt by not acting reasonably in fulfilling its responsibility to deliver the proposal to the proper place, at the proper time. Integrated Support Sys., Inc., B-283137.2, Sept. 10, 1999, 99-2 CPD ¶ 51 at 1. For example, the government may argue that Shirlington had a duty to inquire about the appropriate address for bid deliveries. However, Shirlington submits that when there is an ambiguity followed by an inquiry, as

occurred in this case, there is an increased obligation on the part of the government to be meticulously explicit in explaining where and how bids should be submitted.

Shirlington contends that the facts and testimony of this case reveal that the government's wrongful action was the paramount cause of its allegedly improper submission.

**ii. The Integrity of the Procurement Process Would be Preserved if Shirlington's Proposal was Deemed Timely.**

Consideration of Shirlington's proposal would not adversely impact the integrity of this competitive procurement. The underlying policy for application of the late proposal rules is to ensure fair and equal competition and to avoid confusion. Tishman Constr. Corp., B-292097, May 29, 2003, 2003 CPD ¶ 94. Where, as here, the offeror has relinquished control over the bid before the time for bid opening and has not had the opportunity to see, modify, or otherwise handle its proposal, consideration of the proposal would not contradict the purposes of this policy. *See* Select, Inc., B-245820, Jan. 3, 1992, 92-1 CPD ¶ 22 at 3.

**b. The Statutory Exception to the Filing Requirements also Applies to the Facts of this Case.**

In addition, FAR § 15.208(b)(1)(ii) sets out a statutory exception to the FAR filing requirements. Specifically, a "late" bid may be considered if (i) it is received before award is made; (ii) acceptance of the bid would not unduly delay the acquisition; and (iii) there is acceptable evidence to establish that the bid was received at the government installation designated for receipt and was under the government's control prior to the time for receipt. FAR § 15.208(b)(1)(ii).

**i. The Proposal was Received Before the Award and Accepting the Bid Would Not Delay the Acquisition**

It is uncontested that the proposal was received at the bid room before the award was made in this Solicitation. Further, to date, no award has yet been made in this procurement. Thus, there is no prejudice to the government or other parties in accepting Shirlington's proposal. In addition to delcaratory relief, Shirlington is seeking a temporary restraining order and/or preliminary injunction to bar the government from awarding this contract on grounds in addition to the government's failure to accept its proposal. Should either request be granted, it would ensure that acceptance of Shirlington's proposal would not delay the acquisition because it would have been stayed pending the outcome of this case.

**ii. The Proposal is in the Agency's control**

The date and time stamped Bid Receipt provided to Shirlington's representative at the 7th and D Street Bid Office reflects the fact that the proposal was submitted to the government before the December 19, 2006 10 o'clock a.m. deadline stated in the third amendment to the RFP. (Complaint Exhibit 9).

Shirlington acknowledges that the government will likely argue that this exception is not applicable to the facts of this case. However, it is important to note that the GAO has held that a strict and literal application of the bid delivery requirements should not be used to reject a bid where to do so would contravene the intent and spirit of full competition. Select, Inc., B-245820, Jan. 3, 1992, 92-1 CPD ¶ 22 at 3. In refusing to accept and consider Shirlington's proposal for award under the Solicitation, DHS is acting in contravention of the intent and spirit of competition requirements.

**4. DHS Breached the Implied Duty of Good Faith and Fair Dealing**

Shirlington will also demonstrate that DHS breached the implied covenant of good faith and fair dealing when conducting its research and analysis of potential HUBZone offerors and when drafting the Solicitation.

The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to the other. *See* Restatement (Second) of Contracts § 205. "This duty applies to the Government throughout the procurement process . . .[i]f the Government conducts a procurement in an arbitrary, capricious or irrational manner, then it has breached the implied contract to consider all bids fairly and honestly." *Comprehensive Health Servs., Inc. v. United States*, 70 Fed. Cl. 700, 738 (2006).

This Court has looked to four factors to help determine if a breach of the duty of good faith and fair dealing has occurred: (1) absence of a reasonable basis for the administrative decision; (2) the amount of discretion afforded to the procurement officials by applicable statutes and regulation; (3) proven violations of pertinent statutes or regulations; and (4) subjective bad faith. *Id.* citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974). It is not required that each of the four factors be present in order for the Court to find a breach. *Id.*

As demonstrated above, DHS' failure to properly set-aside the Solicitation for HUBZone small business concerns, and its subsequent failure to accept Shirlington's proposal, were both unreasonable and done in violation of federal procurement law and regulations. In addition, Shirlington will demonstrate that DHS acted in bad faith in conducting market analyses and drafting the Solicitation.

It is undisputed that Shirlington has performed admirably as the incumbent contractor on the DHS contract requiring substantially similar services as those sought under the Solicitation.

However, in the spring of 2006 Shirlington and its owner's name were mentioned in conjunction with Congressional and federal investigations into the scandals surrounding former Congressman Randy "Duke" Cunningham. Among other things, Mr. Baker, owner, founder, and Chief Executive Officer of Shirlington, was linked to Congressman Cunningham and that linkage has led to unfounded press reports that are injurious to his reputation. Despite some people at DHS coming to his defense, apparently the procurement operation has succumbed to the political pressure. Mr. Baker readily acknowledges the mistakes of his distant past. However, his superior performance of the Existing DHS Contract is evidence of the incredible transformation he has undergone, as he has become an accomplished and successful member of the Washington, D.C. small business community.

In light of these baseless allegations, on May 8, 2006 two members of the House Committee on Homeland Security sent a letter to Homeland Security Inspector General Richard Skinner, requesting an investigation into DHS' dealings with Shirlington. (Complaint Exhibit 10). Congresswoman Louise Slaughter also sought a Resolution of Inquiry, directing the Secretary of Homeland Security to provide information to the House of Representatives relating to any existing or previous agreement between the Department of Homeland Security and Shirlington. (Complaint Exhibit 11). This resolution was adversely reported by the House Homeland Security Committee because the members did not want to duplicate the efforts of the House Select Committee on Homeland Security: Subcommittee on Management, Integration and Oversight Subcommittee which was planning to investigate in response to its Member's May 8, 2006 letter.

On May 26, 2006 the Select Committee held a hearing on the Homeland Security Department's Shirlington Limousine Case. It is obvious from the hearing transcript that DHS faced enormous scrutiny regarding the award of the Existing Contract to Shirlington.

Despite the many false accusations levied at that hearing, Shirlington's performance excellence was also acknowledged. When questioned about Shirlington's receipt of a DHS small business achievement award for meritorious service in 2005 Mr. Kevin Boshears, director of the DHS Office of Small and Disadvantaged Business Utilization stated that Shirlington received the award because "[a]ccording to the nomination form, they provided outstanding customer service. . .on their contract with us. . ."

However, the political pressure described continued throughout the rest of 2006 and is most clearly demonstrated by the letter written by Congresswoman Louise Slaughter to Michael Chertoff, Secretary of the Department of Homeland Security immediately after DHS awarded Shirlington a nine-month option under the Existing Contract. Among other inflammatory comments, it states, "I am angry [sic] by DHS' decision to continue Shirlington Limousine, Inc.'s contract, and urge that it be revoked until the investigation into the company's questionable actions are concluded." (Complaint Exhibit 13).

In turn, DHS sought to relieve some of this political pressure by issuing the Solicitation at the center of this case. Acknowledging that it would be too costly to simply terminate the Existing Contract with Shirlington, DHS crafted a procurement strategy around Shirlington so as to preclude it from competition. Thus, despite its successful past history of using HUBZone set-asides, DHS instead issued the solicitation as a much broader small-business set-aside. In addition, the Solicitation also contained new security requirements that would admittedly be difficult for a small business such as Shirlington to meet. (Shirlington has, notwithstanding this

attempt, met those requirements in its rejected proposal.) In caving to these political pressures, DHS breached the implied duty of good faith and fair dealing. This was done at the expense of not only Shirlington, but also at the expense of the numerous other HUBZone contractors which should have been eligible to compete for this contract. This bad faith was further amplified when DHS refused to accept Shirlington's proposal despite the convoluted instructions for submission of Proposals included in the Solicitation and subsequent misleading statements made by DHS personnel.

Finally, Shirlington notes that should the court determine that DHS did err by failing to set aside the Solicitation for competition among HUBZone small business concerns, any analysis of the Government's bad faith would become moot. An Order requiring DHS to cancel the Solicitation and reissue a new one properly set-aside for HUBZone small business concerns would also moot any analysis of whether DHS acted improperly in failing to accept Shirlington's proposal.

DHS' errors are clear in Shirlington's view, and in the view of the SBA as demonstrated through their comments to the first GAO protest. However, Shirlington finds itself required to bring these allegations of bad faith in light of the agency's improper behavior.

**B. Shirlington Will be Irreparably Harmed if this Procurement is not Enjoined**

Shirlington will suffer irreparable injury if it is denied injunctive relief because it will be denied a fair opportunity to compete under the solicitation and to benefit from a lawful procurement process. When assessing irreparable injury, the relevant inquiry is whether the plaintiff has an adequate remedy in the absence of an injunction. *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 716-17 (2006) citing *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). Shirlington contends that it will be irreparably harmed if the Solicitation is not enjoined because it will lose the opportunity to compete on a level playing field. "Such a lost

opportunity to compete has been found sufficient to constitute irreparable harm." *Int'l. Res. Recovery, Inc. v. United States*, 60 Fed. Cl. 1, 8 (2004) citing *United Payors & United Providers Health Servs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (2003).

In failing to properly set-aside the Solicitation for a HUBZone small business concern, Shirlington has been denied the opportunity to compete in a valid procurement process. The Court's failure to issue a preliminary injunction will result in a competitive disadvantage to Shirlington as it will not be afforded the preferential treatment to which it is statutorily entitled as a HUBZone small business concern. Without injunctive relief, the remedy that Shirlington seeks (requiring DHS to conduct a proper procurement under a new Solicitation) will, in a very practical sense, be completely unavailable. Thus, temporary or preliminary injunctive relief is proper.

### C. The Harm Suffered by Shirlington if Injunctive Relief is Denied Outweighs the Potential Harm to DHS

Because the balance of harm favors Shirlington, injunctive relief is appropriate in this case until the Court can rule on the merits of Shirlington's Complaint. Under the terms of its Existing Contract with Shirlington, DHS is currently receiving services substantively similar to those sought in this Solicitation. The Existing Contract has been optioned such that services are scheduled to continue through July 26, 2007. An additional option available under the Existing Contract would allow DHS to continue to receive services until the end of October 2007. Thus, an injunction staying the award of the new Solicitation would not result in any service or performance interruptions for DHS. At most, DHS would suffer a delay before the contract may be awarded. However, delay in awarding a contract alone is insufficient to warrant denial of injunctive relief. *Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500, 514 (2005); *PGBA, LLC. v. United States*, 57 Fed. Cl. 655, 664 (2003).

In contrast, Shirlington would suffer irreparable harm as set forth previously in this Memorandum. It would lose potential profits, as well as all reasonable probability of obtaining the subject contract. The harm caused by a minimal delay in a contract resulting from an injunction is significantly outweighed by the harm Shirlington will suffer if it is illegally and unreasonably denied the opportunity to compete in a valid procurement process. Thus, this Court should recognize that any harm to DHS caused by a slight delay in contract award is minor as compared to the harm that will be caused to Shirlington if its Complaint and action thereunder are ultimately sustained.

### D. The Public Interest Will be Served by Granting Preliminary and/or Temporary Injunctive Relief

The Federal Circuit has long recognized that the public interest lies in honest, open and fair competition in public procurement. *See Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 269 (1997). Further, "[i]t is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *Alion Sci. and Tech. Corp. v. United States*, 74 Fed. Cl. 372, 376 (2006) citing *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004). DHS' violations of federal procurement statutes, regulations and policies, adversely affect and undermine the integrity of the entire federal procurement process. Granting the injunction would preserve the status quo until a court can decide the merits of the case. Shirlington submits that granting injunctive relief would further the overriding and predominating public concern for preserving fair and open competition.

## IV. CONCLUSION AND RELIEF REQUESTED

As set forth in Plaintiff's Complaint and detailed in this Memorandum of Points and Authorities, DHS' decision not to set aside the Solicitation for HUBZone small business

concerns was arbitrary and capricious, an abuse of discretion, and clearly violative of federal procurement laws and regulations.

Accordingly, Plaintiff respectfully requests the Court grant Plaintiff's Motion for Temporary Restraining Order and/or Plaintiff's Motion for Preliminary Injunction, to be in effect until the Court issues a decision on the merits.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., 9th Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fx: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

April 4, 2007

OF COUNSEL:

William J. Spriggs
Katherine A. Schultz
Spriggs & Hollingsworth

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of April, 2007, two copies of the foregoing Memorandum of Points and Authorities in Support of Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction were caused to be hand delivered to the following:

Kenneth Woodrow, Esq.
U.S. Department of Justice
Commercial Litigation Branch, 8th Floor
1100 L Street, N.W.
Washington, D.C., 20530

David J. Taylor