IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

| | |
|---|---|
| SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC., Plaintiff, | |
| v. | No. 07-220C<br>Judge Braden |
| THE UNITED STATES. Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD WITH EXPANDED DISCOVERY**

Plaintiff, Shirlington Limousine & Transportation, Inc. ("Shirlington"), through its undersigned counsel and pursuant to Rules 26 and 30 of the Rules of the Court of Federal Claims ("RCFC") moves the Court for leave to conduct limited discovery on an expedited basis through the use of a deposition upon oral examination. This request to supplement the administrative record with expanded discovery is predicated upon Plaintiff's belief that expanded and expedited discovery is essential to allow Plaintiff to discover facts necessary to this Court's decision on the merits of Count II of this case and any disruption to the Defendant will be minimal.

**ARGUMENT**

The United States Court of Appeals for the Federal Circuit has not addressed the circumstances under which the Administrative Record ("A.R.") may be supplemented. The United States Court of Federal Claims and the United States Court of Appeals for the D.C. Circuit, however, have allowed the consideration of "extra-record" evidence in narrow

circumstances. In *Cubic Applications, Inc. v. United States,* 37 Fed. Cl. 339 (1997), (citing *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C. Cir. 1989)), this Court adopted the eight "situations" or factors that the *Esch* court had outlined for "extra- record" review:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Cubic Applications, Inc.* 37 Fed. Cl. at 342; *see also Myers Investigative and Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 288, 294 (2000); *Chapman Law Firm Co. v. United States*, 71 Fed. Cl. 124, 127 (2006) (*dicta* stating that the Court applied the criteria from *Esch* in deciding to allow Plaintiff to take the depositions of two individuals); *DGS Contract Serv., Inc. v. United States*, 43 Fed. Cl. 227, 235 (1999) (Plaintiff allowed to conduct limited deposition of contracting officer regarding (1) structure of the administrative record and relationship of documents contained therein, and (2) factual portion of telephone conference between awardee and agency). Such supplementation is appropriate when the record "still has lacunae that should be filled based on the [P]rotester's challenges." *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 119 (2000). Plaintiff submits that *Esch* factors one, four, six, and eight are relevant to this case.

### A. The Administrative Record does not Adequately Explain the Agency's Action

First, Plaintiff contends that it is necessary to supplement the A.R. with deposition testimony to provide Plaintiff and the Court the opportunity to fully explore its allegations

regarding the Agency's alleged improper refusal to accept its proposal. The A.R. does not provide the context and explanations that Plaintiff seeks.

Here, Plaintiff seeks limited and specific discovery from a single individual, Mr. Frank Rumph, the contract specialist for the Solicitation at issue in this bid protest. Mr. Rumph is the most knowledgeable and reliable source of information regarding the circumstances surrounding the receipt and acceptance of proposals submitted in response to the Solicitation at issue here, and specifically the circumstances surrounding the receipt of Shirlington's proposal and any assistance given other offerors. Plaintiff has made allegations that require facts to be established that will likely come from outside of the A.R. that the agency has produced. In particular, Plaintiff seeks the opportunity to question this individual about any and all contacts he may have had with potential and actual offerors.

In the A.R., DHS has admitted that on the morning that proposals were due, Mr. Frank Rumph told two other offerors that the proposals were to be delivered to the Anacostia Naval Station. *See* Statement of Frank Rumph dated February 15, 2007, A.R. Tab 31, p. 559. Shirlington was not provided such guidance.

Despite this admission, there is nothing in the A.R. that explains whether the Agency had contact with other potential or actual offers at any time prior to the date that proposals were due. Although Mr. Rumph provided a Statement, unfortunately that statement does not address this question, which goes to the substantive basis for this pre-award protest. For example, the Statement does not explain whether or not Mr. Rumph was contacted by potential offerors in the days leading up to the proposal due dates, and what information, if any, he may have shared with these offerors.

Moreover, through its own investigation, Shirlington has discovered that the process for delivering an item, such as a proposal, to the location where they were to be received, 245 Murray Lane, is highly technical and burdensome. *See* April 18, 2007 Declaration of Lucretia Pearce (Attachment A). As Plaintiff contends in its Complaint, if it is found that additional guidance or instructions were provided to any other offeror, for example, instructions as to how to navigate through the multiple levels of security to reach 245 Murray Lane, and such information was not shared with all other bidders, the agency should be required to accept Shirlington's proposal as properly filed.

**B. The Complex Facts of this Case Warrant Additional Discovery**

In addition, as reflected in Plaintiff's filings, this case presents a complicated and complex set of facts because each of the three counts included in Plaintiff's Complaint are intertwined. For example, implicit in Plaintiff's allegation of breach of the implied duty of good faith and fair dealing stated in Count III are Plaintiff's allegations regarding the Agency's improper decision not to set the Solicitation aside for HUBZone small business competition (Count I) and its failure to accept Shirlington's proposal (Count II). *Cubic Applications* holds that "extra-record evidence" is proper "when a case is so complex that a court needs more evidence to enable it to understand the issues clearly." 37 Fed. Cl. at 342.

**C. Plaintiff has Sued the Government Regarding the Agency's Failure to Take Action**

Plaintiff's request for relief in Count II turns on its allegation that the Government improperly failed to accept its proposal as properly filed. It has also been held that extra-record discovery is warranted "in cases where agencies are sued for failure to take action." *Cubic Applications, Inc.*, 37 Fed. Cl. at 342. Here, Plaintiff argues that the Agency acted improperly in failing to accept its proposal and seeks declaratory judgment compelling its acceptance. The

limited deposition of Frank Rumph will provide both the court and the Plaintiff the opportunity to gain a better understanding of why the Agency failed to accept the proposal and whether this failure to act was appropriate.

**D. Plaintiff Seeks Injunctive Relief**

Further, the Court has noted that expanded discovery may also be warranted when the Plaintiff has requested relief, particularly at the preliminary injunction stage. *Cubic Applications, Inc.*, 37 Fed. Cl. at 342. Upon filing this action, Plaintiff sought immediate relief, either in the form of a Temporary Restraining Order or Preliminary Injunction. The Defendant has agreed to withhold award of this contract until June 2007 to allow the Court the opportunity to determine the merits of this protest. However, Plaintiff's Complaint also seeks permanent injunctive relief, requesting that the Court enjoin DHS from proceeding with an award of the contract. Plaintiff contends that expanded and expedited discovery is necessary to allow the Court to properly consider Plaintiff's request for permanent injunctive relief, which, *inter alia*, could include an affirmative injunction compelling the Agency to accept Plaintiff's proposal of December 19, 2006, under the unique circumstances of this case.

**CONCLUSION**

It would be impossible for Plaintiff to fully prosecute its claim under Count II if it is not permitted to investigate the circumstances surrounding the receipt of all other proposals through expanded discovery. Justice and procedural due process require that the Plaintiff be allowed an opportunity to fully explore the facts surrounding the Agency's failure to accept Plaintiff's proposal so that the Court can have access to all information in support of its argument. This is of particular moment here, where the Plaintiff seeks such limited discovery.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., 9th Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fx: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

April 18, 2007

OF COUNSEL:

William J. Spriggs
Katherine A. Schultz
SPRIGGS & HOLLINGSWORTH

**CERTIFICATE OF FILING**

I hereby certify that on the 18th day of April, 2007, a copy of the foregoing "Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Supplement the Agency Record with Expanded Discovery" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David J. Taylor

**ATTACHMENT A**

**DECLARATION OF LUCRETIA PEARCE**
**April 18, 2007**

The purpose of this declaration is to set forth facts in support of Plaintiff's Motion for Leave to the Supplement the Administrative Record with Expanded Discovery

1. On the morning of December 19, 2006, we were prepared to deliver our bid. After going through the binders one more time, we referred to the solicitation that indicated that the proposals should be delivered to 245 Murray Lane, Bldg. 410. We also deliberated over why this proposal was not to be submitted via e-mail, as the past two solicitations had been.

2. When we began the first contract in 2004, Department of Homeland Security (DHS) personnel instructed us that 245 Murray Lane, SW, is synonymous with the GSA Building at 7th & D Streets, SW. As the incumbent contractor, we have always delivered, and continue to deliver documents as routinely as once a month to this building. Such documents include signed contracts, contract modifications and invoices. All of the documents bear the address 245 Murray Lane, Bldg. 410, Washington, DC 20528.

3. After instructing offerors twice in the solicitation to deliver the bid to 7th & D Streets, SW/245 Murray Lane, Bldg. 410, the amendment in the RFP later on states 'change the address to read,' 245 Murray Lane, SW., Bldg. 410. It does not say 'deliver to' 245 Murray Lane, SW, neither does it say not to deliver to 7th & D Streets, SW.

4. At no time in the RFP were the instructions given that the delivery address, as evidenced on government documents, is actually a building within a secured facility on Bolling Air Force Base or Anacostia Naval Station, because the Government deems this address secret, secure, and anonymous to DHS employees and contractors.

5. Since the very first proposal delivered to DHS was taken to the bid office, we concluded that this was the place to submit the proposal. Mr. Baker informed me that he had tried to contact Frank Rumph, but received a voicemail. In order to confirm our decision I made an emergency call to my Contracting Officer, Shirley Turner at 8:38 am. This call is shown as call number 3 on the attached Cellular Services Call Detail. I told her I was about to submit my proposal. She seemed surprised and wondered why the request had not been made to submit it electronically. She asked, "What does the solicitation say?" I responded, "245 Murray Lane, Bldg. 410. But that is the DHS Building." In the end, she said, "take it to the building. Take it to Frank Rumph." I then called the substitute for my COTR Jim Rappa. He was not available, so I contacted the Director of Asset Management, Bill Guerin. He also was not available. These calls are listed as call numbers 5 and 6 on the attached Cellular Services Call Detail.

6. When I delivered the bid to the bid room, I asked the lady behind the counter if she was DHS procurement personnel and if that was the correct place to submit this proposal. She verified the solicitation number and said "Yes." She accepted the bid, wrote up my bid receipt and clocked the delivery in.

ATTACHMENT A

7. We have since found out that there is a four-part inspection process to entering Bolling Air Force Base and Anacostia Naval Station. They are as follows:

1) The individual must approach the gate secured by Military Police. He must state his purpose, and show Military ID, Air Force Base ID or regular ID. Upon stating intent to go to 245 Murray Lane, Bldg. 410 you must present a delivery manifest along with a regular ID.

2) The individual is directed to the base' Visitor Center where he must produce a vehicle registration, insurance card, and current driver's license. He must fill out a government form to receive a Visitor's Pass.

3) The individual must report once again to the front gate to produce his Visitor's Pass and ID to receive clearance to enter the base.

4) The individual is then directed to 245 Murray Lane, Bldg 410.

None of the aforementioned procedures were explained in the Request for Proposals.

8. The bid sat in the bid room from December 19, 2006 to January 9, 2007, when we found out it had not been acknowledged. Since submitting the bid, the Chief of the Bid Room apologized, saying "Either someone left this here intentionally or they made a mistake." He assured me he would have someone from DHS come down from upstairs and pick up the bid and to call him in the morning. When I contacted him the next morning he said he had spoken with someone upstairs and evidently the person who brought the cart down to pick up the bids left mine on the table. He instructed me to call back in the afternoon. When I called him back, he told me he was sorry, I would have to come and pick up the bid and take it to 245 Murray Lane, Bldg. 410. I asked him "Where is Murray Lane? It's that building", to which he replied, "I don't know, but you have to come and get them out of here."

9. DHS personnel along with a representative from the Small Business Office in DHS advised me to talk with Vicky Short, Contracting Officer, appointed to preside over the solicitation, to explain the procedures that were taken when submitting the bid. She told me she was not allowed to talk to me.

10. Since then, DHS has refused to accept our bid and the bid has not been returned to our office.

11. I declare under penalty of perjury pursuant to 28 U.S.C. 1746, that the foregoing is true and correct.

Lucretia A. Pearce

Lucretia Pearce
Chief Operating Officer and Project Manager
Shirlington Limousine & Transportation, Inc.

April 18, 2007

Date: April 18, 2007

PRINT THIS PAGE ▸

☒ Close

Account number: **622029023**

Account Administrator: **Chris Baker**

Statement Date: January 11, 2007

Billing Period: December 08 - January 07, 2007

Select Another Billing Period

Show available reports

**To view coverage maps and rates visit Sprint.com.**

## DETAILS FOR 202-437-3142

## Cellular Services Call Detail

| No. | Date | Time | Call To | Number | Footnote (See pg. 2) | Min:Sec | Usage | *Long Dist./ Other | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/08 | 06:34A | Incoming | 202-437-2400 | OP | 1:00 | 0.00 | 0.00 | 0.00 |
| 2 | 12/08 | 08:00A | Incoming | 703-924-3121 | PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 3 | 12/08 | 08:38A | WASHINGTON DC | 202-316-1642 | PP | 2:45 | 0.00 | 0.00 | 0.00 |
| 4 | 12/08 | 08:41A | WASHINGTON DC | 202-393-3002 | PP | 1:23 | 0.00 | 0.00 | 0.00 |
| 5 | 12/08 | 08:43A | WASHINGTON DC | 202-447-5084 | PP | 1:21 | 0.00 | 0.00 | 0.00 |
| 6 | 12/08 | 08:46A | WASHINGTON DC | 202-447-5031 | PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 7 | 12/08 | 08:50A | ALEXANDRIA VA | 703-924-3121 | PP | 1:25 | 0.00 | 0.00 | 0.00 |
| 8 | 12/08 | 09:10A | Incoming | 202-898-0481 | PP | 3:33 | 0.00 | 0.00 | 0.00 |
| 9 | 12/08 | 09:35A | WASHINGTON DC | 202-437-2400 | PP | 1:30 | 0.00 | 0.00 | 0.00 |
| 10 | 12/08 | 09:37A | Incoming | 202-437-2400 | PP | 4:21 | 0.00 | 0.00 | 0.00 |
| 11 | 12/08 | 09:45A | Incoming | 703-924-3121 | PP | 7:53 | 0.00 | 0.00 | 0.00 |
| 12 | 12/08 | 11:04A | Incoming | 202-437-3158 | PP | 3:01 | 0.00 | 0.00 | 0.00 |
| 13 | 12/08 | 11:05A | WASHINGTON DC | 202-879-3013 | PP | 1:08 | 0.00 | 0.00 | 0.00 |
| 14 | 12/08 | 11:12A | Incoming | 202-637-2762 | PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 15 | 12/08 | 11:28A | ATLANTA NW GA | 678-290-6006 | PP | 1:15 | 0.00 | 0.00 | 0.00 |
| 16 | 12/08 | 11:45A | Incoming | 202-427-6601 | PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 17 | 12/08 | 11:59A | WASHINGTON DC | 202-393-3002 | PP | 1:20 | 0.00 | 0.00 | 0.00 |
| 18 | 12/08 | 01:29P | Incoming | 678-290-6006 | PP | 1:01 | 0.00 | 0.00 | 0.00 |
| 19 | 12/08 | 01:37P | Incoming | 202-393-3002 | PP | 1:00 | 0.00 | 0.00 | 0.00 |
| 20 | 12/08 | 01:47P | NORRISTOWN PA | 610-220-9111 | PP | 7:32 | 0.00 | 0.00 | 0.00 |