IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

| | |
|---|---|
| SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC., Plaintiff, | |
| v. | No. 07-220C<br>Judge Braden |
| THE UNITED STATES, Defendant. | |

**PLAINTIFF'S MOTION FOR LEAVE TO**
**SUPPLEMENT THE ADMINISTRATIVE RECORD**

COMES NOW Plaintiff, Shirlington Limousine & Transportation, Inc. ("Shirlington") and pursuant to the Rules of the United States Court of Federal Claims ("RCFC") Appendix C, ¶ 24, moves the Court for leave to supplement the Administrative Record ("AR") in this pre-award bid-protest. In particular, Shirlington wishes to supplement the AR with three documents that are part of the record in the previous bid protest proceedings at the Government Accountability Office ("GAO") but which were not included in the AR filed by the Defendant.

The three documents in question are:

(1) Additional Comments of Protester in File No. B-299241 (January 31, 2007) (Exhibit A hereto);

(2) Declaration of Lucretia Pearce, Chief Operating Officer and Project Manager, Shirlington Limousine & Transportation, Inc. (January 18, 2007) (Exhibit B hereto);

(3) Declaration of Christopher Baker, Owner, Shirlington Limousine & Transportation, Inc. (January 18, 2007) (Exhibit C hereto).

All of these documents are properly part of the Administrative Record pursuant to RCFC Appendix C, ¶ 22(u) ("the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement").

The three documents Plaintiff seeks to have included in the Administrative Record were each filed in the underlying protests of this procurement. Specifically, the Additional Comments (Exhibit A) were filed by the Protester in Protest B-299241 pursuant to 4 C.F.R. § 21.3(j). The two declarations (Exhibit B and Exhibit C) were filed by the Protester as Attachment 1 and Attachment 2 to Protest B-299241.2. These two declarations were also included as attachments to Exhibit 4 of Plaintiff's Complaint in the Court of Federal Claims.

To date, the Government has not raised any concerns regarding these statements, and in fact, has relied upon Ms. Pearce's declaration in support of its own filings, including Defendant's Opposition to Plaintiff's Motion for Leave to Supplement the Administrative Record with Expanded Discovery and Defendants' Motion to Strike Affidavit Submitted with Plaintiff's Motion for Leave to Supplement the Administrative Record with Expanded Discovery. Opp. at 6; Mot. at 5 (stating "[t]he Pearce Affidavit [of April 18, 2007] is contradicted by Lucretia Pearce's own statement in the administrative record. In her January 18, 2007 statement, included with Exhibit 4 to Shirlington's complaint, she discusses . . . ).

Accordingly, Shirlington respectfully requests that the Court supplement the Administrative Record pursuant to RFCF App. C, ¶ 24 to include the attached Exhibits A, B, and C.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, NW, Ninth Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fax: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

April 30, 2007

OF COUNSEL:
William J. Spriggs
Katherine A. Schultz
SPRIGGS & HOLLINGSWORTH

**CERTIFICATE OF FILING**

I hereby certify that on this 30th day of April, 2007, a copy of the foregoing "Plaintiff's Motion for Leave to Supplement the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David J. Taylor

# EXHIBIT A

Spriggs 25 YEARS Hollingsworth

Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

David J. Taylor
202.898.5838
davidtaylor@spriggs.com

January 31, 2007

**VIA E-MAIL TO: protests@gao.gov**

Gary Kepplinger, Esq.
General Counsel
United States Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Attn: Procurement Law Control Group (Kenneth Kilgour, Esq.)

**Re: Additional Comments of Protester in File No. B-299241**
**Solicitation No. HSHQDC-07-R-00009**
**Protest of Shirlington Limousine & Transport, Inc.**

Dear Mr. Kepplinger:

Shirlington Limousine & Transportation, Inc. ("Shirlington") hereby submits its response to the Agency Comments filed by the U.S. Department of Homeland Security ("DHS" or "the Agency"), received via e-mail on January 29, 2007, and with attachments on January 30, 2007.

**BACKGROUND**

On November 20, 2006, DHS issued a solicitation (the "Solicitation") as a request for proposals set aside for competition among small businesses. Under the Solicitation, the winning contractor will provide transportation services to DHS employees within the District of Columbia and surrounding areas. Because the Solicitation was inherently flawed, on December 7, 2006, Shirlington submitted a pre-award protest to GAO challenging the propriety of the Solicitation.

In response to the protest, DHS submitted its Agency Record to GAO. Shirlington filed its Comments in response to the Record on January 22, 2007. Recognizing the variety of issues relative to small businesses included in this case, the Small Business Administration ("SBA") also chose to review and provide comments. The SBA Comments were similarly received on January 22, 2007. DHS filed its response on January 29, 2007.

In its Comments, DHS continues to maintain that it was not obligated to set aside the Solicitation for HUBZone small businesses. DHS also denies that the Solicitation contained unduly restrictive requirements. However, as revealed through the Agency Record, the Protester's Comments, and the SBCA Comments, the Agency has failed to meet its burden of demonstrating that (1) it conducted adequate market research regarding HUBZone small

businesses; and (2) the unduly restrictive terms contained in the contract are necessary to satisfy agency needs. Therefore, DHS should cancel the Solicitation and issue a new, less restrictive one, set aside for HUBZone small business concerns.

## LEGAL ANALYSIS

### I. DHS Violated Its Obligation to Set Aside the Solicitation for HUBZone Small Business Concerns.

DHS was required under the law to set aside the subject Solicitation for HUBZone small business concerns if it had a "reasonable expectation" (1) that it would receive offers from two or more HUBZone businesses, and (2) that "award w[ould] be made at a fair market price." FAR 19.1305(a), (b). To have a reasonable expectation regarding anticipated offers under a solicitation, an agency must conduct adequate market research, such that its determination regarding a set aside is "based on sufficient facts so as to establish its reasonableness." Agency Comments at 2.

DHS has failed to answer Shirlington's and SBA's arguments that the Agency's market research was so lacking as to fail to provide the requisite "sufficient facts" needed to establish reasonableness. The Agency attempts to divert attention from the research it failed to do by purporting that Shirlington seeks to impose a "numbers test" on the Agency. Agency Comments at 4. In so doing, DHS fails to address Shirlington's position. In its comments, Shirlington demonstrated the following ways in which DHS' market research was inadequate to provide the "sufficient facts" necessary to make an informed, "reasonable" decision whether to set aside the Solicitation for HUBZone small business concerns:

1. DHS improperly failed to consult the CCR for potential HUBZone offerors.
2. DHS improperly assumed that the three HUBZone firms that responded to the June 2006 RFI were the only three that would be interested in the Solicitation it issued five months later.
3. DHS improperly assessed the capability of the RFI responders to perform the solicited contract at the time they submitted such responses, which was five months prior to issuance of the Solicitation.
4. DHS improperly used access to a DISCO-cleared facility as a prerequisite in assessing capability of RFI responders to perform the solicited contract, when that requirement does not even appear in the Solicitation.
5. DHS improperly ignored the innovative ways in which HUBZone small business concerns could satisfactorily meet the requirements of the solicited contract.

Based on the foregoing, it is apparent that DHS based its decision not to set aside the Solicitation for HUBZone small businesses on outdated and incomplete information. Outdated and incomplete information cannot constitute the requisite "sufficient facts" upon which DHS was required to base its decision. See, e.g., Marketing & Management Information, Inc., B-283399.2, Nov. 30, 1999, 99-2 CPD ¶ 105 (recognizing that GAO had "found unreasonable the determination to issue a solicitation on an unrestricted basis where that determination [was]

based upon outdated or incomplete information.") (citation omitted). Indeed, the Small Business Administration, an independent government agency, also has recognized that DHS "failed to conduct adequate market research." SBA Comments at 6.

Because DHS failed to base its decision not to set aside the Solicitation for HUBZone firms on sufficient facts derived from adequate market research, the Solicitation should be canceled and reissued as a set aside for such businesses.

## II. The Terms of The Solicitation Are Unduly Restrictive.

A solicitation for a government contract may not contain unduly restrictive requirements. Procuring agencies may include restrictive requirements in a solicitation "only to the extent they are necessary to satisfy the agencies' legitimate needs." Container Products Corp., B-28063.2, Nov. 4, 1998, 98-2, CPD ¶ 106 at 3 (*citing* 10 U.S.C. § 2305(a)(1)(B)(1994); Mossberg Corp., B-274059, Nov. 18, 1996, 96-2 CPD ¶ 189 at 2).

When a protester challenges a solicitation provision as unduly restrictive, the **burden is on the agency** to establish prima facie support for its belief that the challenged provision is necessary to suit its minimum needs. Gel-Sys., Inc., B-234283, May 8, 1989, 89-1 CPD ¶ 433 at 2 (emphasis added). In reviewing this protest, GAO must examine the adequacy of the agency's position to ensure that it is rational and can withstand logical scrutiny. Mossberg Corp., B-274059, Nov. 18, 1996, 96-2 CPD ¶ 189 at 2.

Shirlington continues to contend that the Solicitation is unduly restrictive of competition because it requires the contractor to provide (1) executive sedans; (2) electronic access control to vehicle-storage facilities; and (3) ADA-compliant shuttle buses. The burden is on the Agency to demonstrate that these requirements are necessary to satisfy its needs. The Agency Report, and now the Agency Comments, both fail to meet this burden.

### A. EXECUTIVE SEDANS

The Solicitation requires the contractor to provide "all personnel, facilities, materials, supplies, vehicles, equipment, fuel, and services necessary to perform transportation support services for DHS. . ." RFP at 48. In both its Protest and the Comments to the Agency Report, Shirlington offered several arguments reflecting why this requirement is both unduly restrictive and impracticable.

In contrast, neither the Agency Report nor the Agency's Comments respond to these arguments. In fact, the Agency has failed to provide any explanation in support of its decision to require small businesses to acquire and maintain the executive sedans. However, as stated above, the burden is on the agency to demonstrate that this restriction is necessary to meet its needs. *See* Gel-Sys., Inc. at 2. The Agency's resounding silence on this issue indicates that it is unable to offer any explanation in support of this unduly restrictive requirement. Accordingly, this unduly restrictive term should be removed from the Solicitation.

### B. Electronic Access Control

In addition to purchasing and providing all of the executive sedans, the Solicitation also requires offerors to submit a "secure" facility plan for housing the sedans, including an "Electronic Access Control" feature. This entails installing access control keypads with proximity and PIN readers at all doors of the vehicle storage facility. RFP Attachment 4, at 1. Shirlington contends that the "electronic access control" system is an unduly restrictive requirement.

The Agency has provided little evidence in support of this requirement. In the Agency Comments, DHS contends that it is "clear from the Affidavits included in the Record that the Agency's security personnel were involved in the planning of this procurement effort and in establishing minimum security needs for the Agency." Agency Comments at 3. However, the only evidence that security personnel participated in the development of the Solicitation requirements is the curt recommendation of the Chief of Physical Security for DHS. Notably, this statement is dated January 3, 2007, long after the Solicitation was issued and contractor responses were due. Agency Report, Tab 11, attachment.

The Agency also points to the DHS Mission Statement. The Mission Statement reads, "We will lead the unified national effort to secure America. We will prevent and deter terrorist attacks and protect against and respond to threats and hazards to the nation. We will ensure safe and secure borders, welcome lawful immigrants and visitors, and promote the free flow of commerce." Agency Comments, Attachment B. Throughout this protest Shirlington has continually acknowledged the vitally important mission of DHS. However, the Agency cannot rely on the broad statement of "national security" to support its demand for this expensive and unduly burdensome requirement. The Agency has offered no explanation as to why this particular requirement is essential to its security needs. In failing to do so, the Agency has not met its burden and this requirement should be stricken from the Solicitation.

### C. ADA-Compliant Shuttle Buses

The Solicitation requires that all vehicles used for the shuttle service be equipped with passenger aid lift devices (including standard safety equipment (e.g., interior equipment designed to secure wheelchairs)) for passengers requiring assistance. RFP Attachment 2 – DHS Vehicle Standards at 2. Shirlington contends that this requirement is unduly restrictive.

In its Comments, the Agency relies upon the Americans with Disabilities Act ("ADA") to support its contention that this requirement is necessary to satisfy its needs. It is important to note, however, that the ADA does not apply to the federal government. In particular, Sec. 101(5)(B)(i) of the Americans with Disabilities Act, states "Exceptions – The term "employer" does not include – (i) the United States, a corporation wholly owned by the government of the United States, or an Indian tribe." *See* Agency Comments Attachment G, at 5.

Shirlington maintains that this is an unduly restrictive requirement because it will result in excessive costs to the contractor and it is unnecessary to meet the requirements for compliance with the ADA. Having failed to provide sufficient evidence to support this burdensome requirement, the Agency should be obligated to remove it from the Solicitation.

### D. DISCO Certification

The Agency Comments also dedicate several paragraphs of argument in support of the DISCO certification requirement. Protester respectfully notes that it has not challenged this requirement as unduly restrictive. Instead, the DISCO certification was referenced in the Protester's Comments as further evidence of the Agency's reliance on improper bases for assessing the capabilities of potential HUBZone contractors. Protester's Comments at 7.

## III. The OSDBU Did Not Fulfill His Duties Under the FAR and the Small Business Act.

Shirlington stands by its Comments regarding the failure of the OSDBU to fulfill his duties under the FAR and the Small Business Act. The OSDBU did not perform his job adequately. Instead, he aided DHS in its incomplete and cursory review of eligible HUBZone contractors before allowing the Agency to use a small business set-aside, rather than a HUBZone set-aside.

## CONCLUSION

Shirlington has demonstrated through its Protest, its Comments to the Agency Report, and now, through this response, that the Solicitation is marred by many errors and must therefore be canceled. In particular, Shirlington has shown that there is insufficient evidence to support the Agency's decision to issue the Solicitation as a small business set-aside, rather than a HUBZone set-aside. In addition, DHS has failed to meet its burden of demonstrating that the many restrictive terms of the Solicitation are necessary to meet the Agency's needs. Finally, Shirlington has highlighted multiple missteps on behalf of the Director of the OSDBU, whose actions failed to comply with his mandated duties.

For the foregoing reasons, the Solicitation should be canceled and replaced with a new, less restrictive, Solicitation properly set-aside for HUBZone small business concerns.

Sincerely,

KAS

David J. Taylor

David J. Taylor
William J. Spriggs
Sharon M. Mills
Katherine A. Schultz

SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W., 9th Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fx: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel for Protester*

# EXHIBIT B

**DECLARATION OF LUCRETIA PEARCE,**
**CHIEF OPERATING OFFICER AND PROJECT MANGER,**
**SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.**

January 18, 2007

The purpose of this declaration is to set forth the facts relating to Shirlington Limousine & Transport, Inc.'s ("Shirlington") delivery of its proposal in response to the Department of Homeland Security ("DHS") Agency Wide Transportation Services Solicitation, HSHQDC-07-R-00009.

1. I am the Chief Operating Officer and Project Manager for Shirlington Limousine & Transport, Inc.

2. On December 19, 2006, I arrived at the Bid Delivery entrance on 7th and D Streets, S.W. at approximately 9:25a.m. with eight parcels labeled 245 Murray Lane, Building 410, Washington, DC 20528. These parcels contained Shirlington's proposals in response to the DHS Solicitation. I was greeted by two uniformed security guards and explained I had bids to deliver to Homeland Security. They visually screened my parcels and asked for my identification. At that point, I presented my Government Identification, to which they said they needed to see a second identification, namely my driver's license. I was surprised because normally I am able to access the building through two other entrances with my Government ID only. I also realized there was a time factor involved. I questioned them about this, but they were adamant and said I had to leave and return with my driver's license. I returned to my vehicle on D Street, SW to retrieve my license. Upon returning to the building, they allowed me to enter and asked me to put my parcels on the security screening apparatus.

3. I proceeded down the hallway to Bid Room 1065, identified by a sign at the entrance that said HSPD-12 Contractor Processing Center. When I entered, a young lady approached the counter. I announced I was delivering bids for the Homeland Security Transportation Contract. She asked me to place the parcels on the counter so she could check them in. She looked at the parcels identified with the address of 245 Murray Lane, Building 410, Washington, DC 20528, ATTN: Frank Rumph. She registered the parcels by identifying the Request for Proposal Number and clocking it in. She also wrote the Department of Homeland Security's Request for Proposal Number on the receipt, and signed her name, illegibly, to it. She handed the document to me, which I identified as a Bid Receipt. I thanked her and left the room.

4. For the past three years, as the incumbent contractor, Shirlington has understood that the Murray Lane address and the 7th and D Streets, SW address, are, for all intents and purposes, synonymous. In 2004, when Shirlington first began servicing the Department of Homeland Security with its existing transportation contract, the Contracting Officer's Technical Representative ("COTR") told me that Murray Drive (later changed to Murray Lane) is 7th and D Streets, SW. Shirlington has delivered and received documents labeled 245 Murray Lane, Bld. 410 at the 7th and D Streets, SW address for the past three

years. In fact, the very first document Shirlington delivered to DHS, namely, our initial proposal for the existing contract, was addressed to 245 Murray Drive, Building 410 and was submitted successfully to the 7th and D Streets, SW location. Since that time, all documents that read 245 Murray Lane, including monthly invoices and procurement modifications, as well as contract renewal documents, have been hand delivered to 7th and D Streets, SW.

5. On Tuesday, January 9, 2007 I was informed through Christopher Baker, owner of Shirlington, that attorney David Taylor of Spriggs & Hollingsworth had called to say that the DHS had responded to our GAO protest and, among other things, indicated that they had not received our proposal in response to the DHS-Wide Transportation Solicitation. Mr. Baker asked me to find the Bid Receipt I had received on the day of submission, December 19, 2006. Upon finding it and consulting with Shirlington's attorneys, Mr. Baker and I proceeded to the Bid Office to find out the name of the person who had signed the Bid Receipt, whose signature was illegible.

6. When we arrived at the Bid Office we asked if someone could help us establish the signature on the Bid Receipt because it was illegible. I asked a woman at the office whose signature was on the receipt. She immediately responded, "Alicia Yvonne Brown." We asked if Ms. Brown worked in the office, to which she responded, "She works upstairs on the 7th floor." Mr. Baker asked if Ms. Brown works for DHS. The employee responded in the affirmative, saying once again, that Ms. Brown worked upstairs.

7. Mr. Baker also asked "Do they still take DHS bids in this office?" The response was "Yes." He followed up with a second question, asking "was she [Alicia Brown] in that office to receive a big bid on the date on the Bid Receipt?" Once again, the response was "Yes." At that time we presented the Bid Receipt and expressed our concern that the proposal we had submitted could not be found. She then offered to find the Chief of the Operations Branch Procurement Management Division, Carl V. Campbell.

8. Mr. Campbell is the Chief of the Operations Branch Procurement Management Division. Mr. Campbell came out with the Bid Receipt in hand and listened while we told him about the missing proposal. He looked at the Bid Receipt and acknowledged that Alicia Brown worked for him. He then took the Bid Receipt to the back. When he returned, he asked one of us to accompany him to the back. It was decided that I should go. As I followed him, I immediately spotted our proposals sitting in plain view on a desk and exclaimed "Here they are, right here!" He acknowledged that someone must have come down with a cart and left our proposal on the desk. He also acknowledged the mistake to me and said he would be responsible for correcting it. He gave me a business card and encouraged me to call him in the morning. He informed us that he was a Contracting Officer himself and he would "get to the bottom of this." He promised to look into the matter and have someone come down to pick up the proposals and give me a call in the morning. We thanked him and left.

9. That instance was the first and only time that either Mr. Baker or myself have had occasion to see the proposals since they were delivered on December 19, 2006 at 9:46

a.m. We have had no further contact with the proposals and to the best of our knowledge, they still remain at DHS Bid Room 1065, HSPD-12 Contractor Processing Center.

10. On the morning of Wednesday, January 10, 2007, I contacted Mr. Campbell at 9:17 a.m. via my cellular phone to ask what he thought had taken place. He said he had investigated why Shirlington's proposals were on the desk and apologized, saying it was obvious the young lady failed to put them in the cart. He said he would have someone pick them up that morning. I asked him to send me an e-mail explaining what had taken place. He said to send him an e-mail with the request and he would "piggy-back" on that and respond. He confirmed my phone number and promised to call once the proposals were picked up.

11. At 1:15 p.m. January 10, 2007 I received a phone call from Mr. Campbell. He said I had delivered the proposals to the wrong address and he told me, "You have to come and pick them up. They are at the wrong place. This is not 245 Murray Lane." I said to him, twice, "7th and D Streets, SW is Murray Lane." He denied this. Then I asked him, "So where is it?" He responded, "I don't know, you need to look it up on Mapquest." He stated once again that I had to come and pick up the proposals. I ended the call by thanking him and immediately contacted Shirlington's counsel to advise them of the situation.

12. I declare under penalty of perjury pursuant to 28 U.S.C. 1746, that the foregoing is true and correct.

Lucretia Pearce
Lucretia Pearce
Chief Operating Officer and Project Manager
Shirlington Limousine & Transport, Inc.

January 18, 2007
Date

# EXHIBIT C

**DECLARATION OF CHRISTOPHER BAKER, OWNER
SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.**

January 18, 2007

The purpose of this declaration is to set forth the facts relating to Shirlington Limousine & Transport, Inc.'s ("Shirlington") delivery of its proposal in response to the Department of Homeland Security ("DHS") Agency Wide Transportation Services Solicitation, HSHQDC-07-R-00009.

1. On January 10, 2007 I escorted Ms. Lucretia Pearce to the HSPD-12 Bid Room at 7th and D Streets, SW, Washington, DC. We confronted a representative who identified herself as an employee of procurement operations. We showed her a copy of a Bid Receipt that Ms. Pearce received from the Bid Room on December 19, 2006. The receipt bore the signature of Alicia Y. Brown. The representative seemed familiar with the procedure and immediately took the document to the back of the department to consult with another employee.

2. A few minutes later, the second employee greeted us and identified himself as Mr. Campbell, he stated that he is the Chief of Operations and he understood our inquiry. He stated that the receipt was valid and the person who signed the document did work for him, and that it was clear to him the right procedures were taken and that he would investigate.

3. He then asked if one of us could walk to the back of the office with him. Ms. Pearce went with him to the back of the counter. As the two of them went to the office behind the counters, I witnessed Ms. Pearce and Mr. Campbell approach a table holding documents that I recognized as our proposal. Ms. Pearce and I both shockingly witnessed the documents on a table alone.

4. That instance was the first and only time that either Ms. Pearce or myself have had occasion to see the proposals since they were delivered on December 19, 2006 at 9:46 a.m. We have had no further contact with the proposals and to the best of our knowledge, they still remain at DHS Bid Room 1065, HSPD-12 Contractor Processing Center.

5. Mr. Campbell reviewed the information on the Bid Receipt and again said it was obvious that someone forgot or had left these documents behind. Mr. Campbell then produced a business card and gave it to Ms. Pearce. He said that this was unusual and he would make sure the documents would be delivered that day even if he had to do it himself. He mentioned that he was a Contracting Officer and understood the situation. I explicitly asked Mr. Campbell whether this office was the procurement operations room/office to receive bids for DHS. He responded, "Yes, as well as GSA." He told us not to worry and that he would confirm delivery by telephone as soon as it was done. At that point we exited the bid operations office with relief and positive anticipation.

6. As the Contractor, I conducted a review of the procedures taken by Shirlington in responding to the Solicitation, including reviewing the information in the Request for

Proposals and researching our previous responses to Requests for Proposals. I discovered that our interpretation of the Request for Proposals address was the same that it has been for the past three years, including our most recent Request for Information document, which was electronically submitted to 7th and D Streets, SW and addressed to 245 Murray Lane. All documents that were produced from DHS in the past that listed 245 Murray Lane have requested delivery at 7th and D Streets, SW.

7. I also spoke with the security guards at the 7th and D Streets, SW location. They confirmed that responses to Solicitations and proposals that list 245 Murray Lane are routinely signed in and delivered to the HSPD-12 Bid Room at the 7th and D Streets, SW address.

8. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Christopher Baker
Owner
Shirlington Limousine & Transport, Inc.

Jan 18, 2007
Date