IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

| | |
|---|---|
| SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | No. 07-220C<br>Judge Braden |

**PLAINTIFF'S MOTION FOR LEAVE TO REQUEST**
**DOCUMENTS AND EXTENSION OF TIME TO FILE SUPPLEMENTAL BRIEF**

Shirlington Limousine & Transportation, Inc. ("Shirlington"), respectfully moves for leave to request documents and for an extension of time to file a supplemental brief to Plaintiff's April 30, 2007 Motion for Judgment on the Administrative Record. In support of this request, Plaintiff states as follows:

1. On April 18, 2007 Plaintiff filed its Motion for Leave to Supplement the Administrative Record with Expanded Discovery.

2. On May 1, 2007 the Court granted Plaintiff's Motion, and also granted Plaintiff leave to file a supplemental brief to Plaintiff's Motion for Judgment on the Administrative Record on or before May 4, 2007 with information gleaned from the deposition of Frank Rumph as it relates to Count II of the Complaint.

3. On May 2, 2007 the parties convened to take the Deposition of Frank Rumph, Contracting Specialist for Solicitation Number HSHQDC-07-R-00009.

4. At that deposition, Plaintiff learned that on more than one occasion Mr. Rumph was contacted by potential offerors requesting directions or instructions for the delivery of proposals under Solicitation Number HSHQDC-07-R-00009. Dep. of Frank Rumph 26:10-28:12; relevant pages have been appended as Exhibit A (Note that unless otherwise stated, "Q" refers to Mr. Taylor, counsel for Plaintiff, and "A" refers to Frank Rumph, deponent.)

5. Plaintiff also learned that Victoria Short, the Contracting Office, advised Mr. Rumph as to how to respond to inquiries from potential offerors. Dep. of Frank Rumph 30:20-31:4. Specifically, Mr. Rumph was directed to instruct all potential offerors to submit all questions regarding the Solicitation by e-mail. Dep. of Frank Rumph at 31:5-10. Mr. Rumph also indicated that for the phone calls that he received requesting directions or instructions, he requested that the caller send him an e-mail confirming that phone call. Dep. of Frank Rumph at 31:11-14. Mr. Rumph confirmed that he "believe[s]" he still has these e-mails in his possession. Dep. of Frank Rumph at 31:15-16.

6. At the deposition, Plaintiff's counsel asked Government counsel to produce these e-mails, and the Government indicated that it would require Plaintiff to file a formal document request to obtain these documents. Dep. of Frank Rumph at 31:17-22.

7. On May 2, 2007, Plaintiff filed with the Defendant a Request for Production of Documents seeking copies of the e-mails referenced above, specifically e-mails regarding directions or instructions for proposal delivery. Plaintiff hereby requests an order compelling that very limited additional discovery.

8. These e-mails likely contain additional information relevant to Plaintiff's allegations contained in Count II of its Complaint.

Accordingly, Shirlington respectfully requests that the Court order their production and allow Plaintiff additional time to file a supplemental brief to Plaintiff's April 30, 2007 Motion for Judgment on the Administrative Record, up to and including two days following receipt of the subject e-mails.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, NW, Ninth Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fax: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

May 2, 2007

OF COUNSEL:
William J. Spriggs
Katherine A. Schultz
SPRIGGS & HOLLINGSWORTH

**CERTIFICATE OF FILING**

I hereby certify that on the 2nd day of May 2007, a copy of the foregoing "Plaintiff's Motion for Leave to Request Documents and Extension of Time to File Supplemental Brief" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David J. Taylor

# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

SHIRLINGTON LIMOUSINE and TRANSPORTATION, INC., x
Plaintiff,
vs. : Case No. 07-220C
THE UNITED STATES OF AMERICA,
Defendant. x

---

Washington, D.C.
Tuesday, May 1, 2007

DEPOSITION OF:

FRANK L. RUMPH,

a witness, was called for examination by counsel for the plaintiff in the above-entitled matter, pursuant to Notice and agreement of the parties as to time and date, taken at the Department of Homeland Security, 7th and D Streets, S.W., Room 3515, Washington, D.C., convened at approximately 2:25 o'clock, p.m., before Catherine B. Crump, a court reporter and Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

APPEARANCE OF COUNSEL:

On behalf of the Plaintiff:

SPRIGGS & HOLLINGSWORTH, ESQUIRES
BY: DAVID J. TAYLOR, ESQUIRE
KATHERINE SCHULTZ, ESQUIRE
1350 Eye Street, N.W., 9th Floor
Washington, D.C. 20005
(202) 898-5800

On behalf of the Defendant:

UNITED STATES DEPARTMENT OF JUSTICE
BY: KENNETH D. WOODROW, ESQUIRE
1100 L Street, Northwest, Room
Washington, D.C. 20530
(202) 353-0513

and

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
BY: ROSE J. ANDERSON, ESQUIRE,
7th and D Streets, S.W., Room 3051
Washington, D.C. 20528
(202) 447-3529

\- 0 -

I-N-D-E-X

Witness: Page:
Frank L. Rumph
Examination by Mr. Taylor 4

- 0 -

Exhibits: (Included in transcript) Page:
Exhibit Number 1 marked for identification
to the Rumph deposition 25
(April 30, 2007 Court Order)

- 0 -

Whereupon,

FRANK L. RUMPH,

a witness was called to testify by counsel for the defendant, and after having first been duly sworn by the Notary Public, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE PLAINTIFF

BY MR. TAYLOR:

Q. Would you please state your full name for the record?

A. Frank L. Rumph.

Q. Will you spell it for the court reporter?

A. My middle name?

Q. No. The last name.

A. Oh. R-U-M-P-H.

Q. Have you ever had your deposition taken before?

A. No.

Q. You are aware that even though we're sitting in a conference room in a fairly informal environment, that your testimony is under oath and

A. No.
Q. Are you aware that the address for the delivery of proposals under this solicitation was restated two different times subsequent to the initial solicitation?
A. Elaborate.
Q. Are you aware that the address and delivery instructions were changed for this solicitation two times subsequent to the issuance of the initial solicitation?
A. Yes.
Q. And can you tell me why those changes were made?
A. I do not know.
Q. Do you know who made them?
A. I'm not sure.
Q. Who would have been responsible for doing that?
A. The contracting officer.
Q. Who is that?
A. Victoria Short, Ms. Victoria Short.
Q. Are you aware that Shirlington Limousine

is currently providing transportation services under a contract with DHS?

A. Yes.

Q. And are you aware that they occasionally have documents which they need to deliver with respect to their performance under that contract?

MR. WOODROW: Objection. The question goes beyond the scope of the deposition.

MR. TAYLOR: Are you going to let him answer?

MR. WOODROW: No. I'm going to instruct him not to answer. Actually, at this point, if you'll indulge me, I'd like to go ahead and mark an exhibit.

[Rumph Exhibit No. 1 was marked for identification.]

MR. WOODROW: For the record, we've marked as Exhibit No. 1 to Mr. Rumph's deposition a copy of the Court's order dated April 30, 2007 setting forth the subject matter for today's deposition. Thank you.

MR. TAYLOR: Which I have read and

understand.

BY MR. TAYLOR:

Q. Prior to the day of bid delivery -- let me scratch that. When were proposals due under this solicitation?

A. I don't remember.

Q. Well, If I said December 19, 2006, would that refresh your memory?

A. Yes.

Q. Prior to that -- I'm not talking about the day of the bid. Prior to that, did any potential offerors contact you regarding the designated delivery location?

A. Yes.

Q. When I say contact you, I mean by E-mail, phone, letter, fax, or in any other way. So how many potential offerors contacted you?

A. I do not know.

Q. You do not know how many?

A. Correct. I received phone calls. I couldn't give you an exact number.

Q. All right. Well, let's go through it.

You got some inquiries by telephone?
A. Yes.
Q. Did you get any by E-mail?
A. Yes.
Q. Did you get any by fax?
A. No.
Q. Did you get any by letter?
A. No.
Q. Did you get any by personal meeting and request?
A. No.
Q. Now, again, I'm talking prior to December 19th. When did they contact you?
A. Various times.
Q. And why did they contact you?
A. For various reasons.
Q. And I'm talking about regarding the delivery location.
A. Okay.
Q. So is your answer still the same, more than one? You said they. More than one person contacted you with respect to this delivery location

prior to December the 19th?
A. I would say yes.
Q. Again, why did they contact you?
A. For the address of where it is to be delivered.
Q. What questions specifically did they ask you; do you recall?
A. Did I know where the 245 Murray Lane address is.
Q. And what did you tell them?
A. I told them it was at Anacostia Naval Base.
Q. What else did you tell them?
A. That was it.
Q. That was it?
A. They knew --
Q. At no time, did anybody say anything else, ask you anything else?
A. They knew where it was at.
Q. Did you advise anybody to deliver by messenger service?
A. No.

Q. Did you tell any of them that there was particularly high security at that location?

A. No.

Q. Did you ask or did you tell any of them how long it would take them to get something delivered at that location?

A. No.

Q. Did you provide any other specific instructions with respect to how to get a package delivered to 245 Murray Lane?

A. No.

Q. So it's your testimony that someone would call you and say -- well, first of all, did any of them express confusion about the fact that the solicitation listed both 7th and D Street and 245 Murray Lane?

A. No.

Q. Nobody said to you there are two addresses here, which one do I deliver to?

A. No.

Q. So the totality of your phone call, from your testimony, is someone would call and say where

is Murray Lane and you would say Anacostia Naval Station and they would say thanks very much, have a nice day?

A. Yes.

Q. There was no more content of the conversation than that?

A. That was it.

Q. Prior to the day of the bid delivery, did you do anything to inform any potential offerors of the extensive security procedures in place at 245 Murray Lane?

A. No.

Q. Other than saying Anacostia Naval Station, did you provide any directions to 245 Murray Lane?

A. No.

Q. Did you provide any directions to Anacostia Naval Air Station?

A. No.

Q. Did anyone in your office advise you as to how to respond to inquiries from potential offerors?

A. Yes.
Q. And who was that?
A. That's Victoria Short, the contracting officer.
Q. What did she tell you to say?
A. Any questions that we received, we were instructed -- I was instructed to have them submitted by E-mail.
Q. Submit the questions?
A. Questions by E-mail.
Q. So these phone calls that you got requesting directions or instructions, you had them send you an E-mail confirming that phone call?
A. Yes.
Q. Do you have those E-mails?
A. I believe so.
MR. TAYLOR: Will you agree, Counsel, to produce any and all E-mails requesting delivery instructions on these proposals?
MR. WOODROW: I can't at this point agree to do that. I would need a formal document request.

MR. TAYLOR: You'll get it.
MR. WOODROW: If such E-mails, in fact, exist.
MR. TAYLOR: He's just testified they do. I'm reasonably sure they probably will.
BY MR. TAYLOR:
Q. Were you instructed by Victoria Short or anyone else of anything else to say to people if they inquired about delivery of proposals?
A. No.
Q. Do you know who Alicia Yvonne Brown is?
A. No.
Q. Okay. Now I'm talking about the day of December the 19th, the day the proposals were due. Where were you located that morning?
A. In the building.
Q. In this building? How were you accessible that morning? In other words, were you at your computer? Could you receive E-mails?
A. Yes.
Q. Could you receive phone calls?
A. Yes.

Q. Was that only on an office phone or do you also have a cell phone?
A. Only on the office phone.
Q. Okay. Now, did any potential or actual offerors contact you that morning?
A. Yes.
Q. How many?
A. Two.
Q. And what did they ask you?
A. Where the 245 Murray Lane address is.
Q. What did you tell them?
A. Anacostia Naval Base.
Q. Any other instructions to them?
A. No.
Q. What time did they call?
A. I'm not sure.
Q. Give me a reasonable, as close an estimate as you can make.
A. I would say it was before the closing of the proposals were due.
Q. Which was what? Ten o'clock?
A. I'm not sure of the time.

CERTIFICATE OF NOTARY PUBLIC

I, CATHERINE B. CRUMP, the officer before whom the foregoing deposition was taken, do hereby testify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me stenographically and thereafter reduced to typewriting under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto nor financially or otherwise interested in the outcome of the action.

______________________________

CATHERINE B. CRUMP
Notary Public in and for the
District of Columbia

My Commission Expires: October 31, 2007