**COUNT II**

**C. DHS Erred in Failing to Accept Shirlington's Proposal**

DHS should have accepted Shirlington's proposal under both the case law and statutory exceptions to the filing requirements of the FAR. Although a proposal delivered to the wrong location is unacceptable under normal circumstances, the facts of this case are unique and meet both established exceptions. DHS' refusal to accept Shirlington's proposal under the exceptions was "arbitrary, capricious, an abuse of discretion, [and] not in accordance with [the] law." 5 U.S.C. § 706(2)(A). The record evidence mandates DHS accept Shirlington's proposal as properly filed under one or both exceptions.

**1. The Circumstances Surrounding Shirlington's Proposal Submission Meet the Case Law Exception to the FAR Filing Requirements.**

Shirlington's proposal should be accepted as properly filed under the case law exception to the FAR filing requirements because the agency was the paramount cause of the late submission and consideration of the late proposal will not compromise the integrity of the competitive procurement process. *Hosp. Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 623 (2005). "As [the] GAO explained in Wyatt & Assocs., [No. B-243349, 1991 WL 140260, at *2 (Comp. Gen. July 1, 1991)]: . . . [A] hand-carried offer that is received late may be accepted where improper government action was the paramount cause for the late delivery, and the integrity of the procurement process would not be compromised by acceptance of the offer." *Hosp. Klean*, 65 Fed. Cl. at 623 (citing St. Charles Travel, No. B-226567, 1987 WL 102409, at *2 (Comp. Gen. June 5, 1987)). Here, both elements of this exception are met by significant evidence.

**a. The Agency's Actions, In Total, Were the Paramount Cause of Shirlington's Failed Submission.**

The agency engaged in several acts that, in total, constituted the "paramount cause" for Shirlington's late submission. First, the solicitation was inherently confusing in that it listed what is now known to be two different addresses – 7th and D Streets and 245 Murray Lane – as one address in its entirety. (AR Tab 6 at 42 (listing the addresses for all points of contact as: "Office of Procurement Operations, 7th and D, 245 Murray Lane, SW, Bldg. 410, Washington, DC 20528).) Upon noting the confusing instructions and based upon its past dealings with the DHS procurement process, Shirlington elected to the deliver the proposal to the 7th and D Street location.

It appears from the AR that Shirlington was not alone in its confusion. In fact, Frank Rumph, the Contracting Specialist for the procurement stated that on that morning, at "approximately 8:30 am, [he] received two phone calls from prospective Offerors requesting directions to the proposal delivery address of 245 Murray Lane. [He] responded by stating that the location was located at the Anacostia Naval Station." (AR Tab 31 at 559.) This contact between the Agency and other offerors is particularly significant because FAR § 52.214-6 requires "[a]ny information given a prospective bidder concerning a solicitation will be furnished promptly to *all other prospective bidders* as an amendment to the solicitation, if that information is necessary in *submitting bids* or if the lack of it would be *prejudicial* to other prospective bidders." FAR § 52.214-6 (emphasis added).

Given the obvious confusion over the designated submission location, the fact that the agency provided some bidders with additional information "necessary to submitting bids," while other bidders were prejudiced by their inability to gain access to that information is in contravention of FAR § 52.214-6 and the competition process. Here, where the solicitation was

inherently confusing, lacked significant detail regarding the procedure for accessing 245 Murray Lane, and even the personnel at 7th and D Street lacked knowledge of the location of 245 Murray Lane, (*see* Pl.'s Compl. Ex. 4, Attach. 1, Decl. Lucretia Pearce, Jan. 18, 2007 at 11), the prejudice to those bidders who did not receive directions is evident.

Upon arriving at "Bid Room 1065, identified by a sign at the entrance that said HSPD-12 Contractor Processing Center," Ms. Pearce inquired as to the proper location for bid submission. (Pl.'s Compl. Ex. 4, Attach. 1, Decl. of Lucretia Pearce, Jan. 18, 2007 at 3.) Ms. Pearce announced to the government staff that she was delivering bids for the Homeland Security Transportation Contract and watched as the government worker proceeded to check in the proposal, which included reviewing the addresses as listed, clocking it in, and filing out the bid receipt with the corresponding solicitation number. (*See* Pl.'s Compl. Ex. 4, Attach. 1, Decl. of Lucretia Pearce, Jan. 18, 2007 at 3.) It was only at this point, after assurances from multiple government personnel that the proposal was properly submitted, that Shirlington left it with the government employee in the bid room.

"One of the fundamental principles underlying the rules for the consideration of late bids is that *a bidder who has done all it could and should to fulfill its responsibility* should not suffer if the bid did not arrive as required because the government failed in its own responsibility . . . a late hand-carried bid may be considered for award if to do so would not compromise the competitive system and either the government's "affirmative misdirection" made the timely delivery impossible, . . . or government mishandling after timely receipt by the agency was the sole or paramount cause for the bid's late receipt at the designated location." *Hosp. Klean.*, 65 Fed. Cl. at 623 (citing Palomar Grading & Paving, Inc., No. B-274885, 1997 WL 8497, at *2 (Comp. Gen. Jan. 10, 1997); AABLE Tank Servs., Inc., No. B-273010, 1996 WL 655549, at *3

(Comp. Gen. Nov. 12, 1996); Kelton Cont., Inc., No. B-262255, 1995 WL 731737, at *2 (Comp. Gen. Dec. 12, 1995); Select, Inc., Nos. B-245820, B-245820.2, 1992 WL 5028, at *3 (Comp. Gen. Jan. 3, 1992)). Further, GAO has "permitted late hand-carried bids to be considered where the bidder's *reasonable reliance* on improper delivery instructions by *knowledgeable government personnel* made it impossible for the bid to be timely delivered to the bid opening location." AABLE Tank Servs., Inc., 1996 WL 655549, at *3 (emphasis added) (GAO upholds decision to accept bids as properly filed where the contract specialist told some bidders to submit to a location different than that designated by the solicitation).

Here, Shirlington identified a confusing portion of the instructions, sought clarification from a contracting official prior to submission and again at the time of submission, and received verbal and written confirmation that its proposal had been timely and properly submitted. Even after learning that DHS did not receive Shirlington's proposal, Shirlington returned to the same office, inquired as to the location of its proposal, and was again assured that the "mistake" was on the part of the office employees and not Shirlington's own actions. (*See* Pl.'s Compl. Ex. 4, Attach. 1, Decl. of Lucretia Pearce, Jan. 18, 2007 at 8, 10.) It was only after filing a separate protest that Shirlington was informed that it delivered its proposal to the wrong location. *See id.* at 11. Coincidentally, it was one of the same government officials who had previously assured Shirlington that its proposal was properly filed, that then instructed Shirlington that it did not submit to the proper location *and* that he did not know the location of 245 Murray Lane. *Id.*

**b. Acceptance of Shirlington's Proposal as Properly Filed is Consistent with the Competitive Procurement System.**

Acceptance of Shirlington's proposal as properly filed will not only preserve the integrity of the procurement process, but also the competitive spirit of the system. "The Comptroller General has on numerous occasions refused to apply this regulation [(FAR 15.208)] requiring

rejection of late bids or offers. *Hosp. Klean of Texas, Inc.*, 65 Fed. Cl. at 623 (citing Adirondak Constr. Corp., Nos. B-280015, B-280015.2, 1998 WL 540030, at *3 (Comp. Gen. Aug. 25, 1998)). In fact, the GAO has noted that "a strict and literal application of the rule that a bid must be at the right place on time in order to be considered should not be used to reject a bid where to do so would contravene the intent and spirit of the competitive system." AABLE Tank Servs., Inc., 1996 WL 655549, at *3. Further, "[t]he purpose of the rules governing consideration of late bids is to insure for the Government the benefits of the maximum of legitimate competition, not to give one bidder a wholly unmerited advantage over another by over-technical application of the rules." *Id.* (citations omitted).

Here, where the evidence unequivocally establishes that Shirlington relinquished control over its proposal to the government *before* the bid submission deadline and the proposal has been in the government's possession from that point until the present, failure to accept that proposal is undoubtedly an "over-technical application of the rules." *Id.* Because no award has been made in this procurement, neither the government nor other bidders would be prejudiced if Shirlington's proposal was accepted as properly filed. Failure to accept the proposal, however, contravenes "the intent and spirit of the competitive system" because it unnecessarily eliminates a competitor who has obtained no unfair advantage from the procurement process. *Id.* For these reasons, and as evidenced by the factual record, the circumstances surrounding Shirlington's proposal submission meet the requirements of the case law exception and thus DHS should be required to accept and consider Shirlington's proposal as properly filed.

### 2. The Facts of Shirlington's Proposal Submission Meet the Statutory Exception to the FAR Filing Requirements.

The record facts demonstrate Shirlington's proposal should be accepted as properly filed under the statutory exception to the FAR filing requirements. FAR § 15.208(b)(1)(ii) allows a

"late" bid to be considered if (i) it is received before award is made; (ii) acceptance of the bid would not unduly delay the acquisition; and (iii) there is acceptable evidence to establish that the bid was received at the government installation designated for receipt and was under the government's control prior to the time for receipt. Shirlington's proposal was received by the government prior to the bid submission deadline and has remained entirely in the government's control since that point. Since DHS has not made an award for this acquisition, accepting Shirlington's proposal as properly filed will not delay the acquisition in any way.

It is uncontested that the proposal was received at the bid room before any award was made for this solicitation. Specifically, the date and time stamped Bid Receipt provided to Shirlington's representative at the 7th and D Street Bid Office shows Shirlington submitted its proposal to the government before the December 19, 2006, 10:00 AM deadline. (AR Tab 34 at 563) As stated above, the second requirement is also satisfied because no award has been made for this acquisition and accepting Shirlington's proposal will not unduly delay nor prejudice the procurement process. The first two requirements of the statutory exception are therefore satisfied.

The evidence also establishes the third requirement, given the fact that Shirlington relinquished control over its proposal to the government prior to the time for receipt and the government continues to maintain control over said proposal today. Contrary to any potential assertion by the agency, this final element of the exception does not require that contractor to submit the bid to the designated office prior to the bid deadline. Rather, this last requirement "is applied to determine whether a late bid (which by definition, was not received at the designated office prior to bid opening) was received at the *government installation* prior to bid opening, *i.e.* anywhere on the government installation other than the designated office." *Cal. Marine*

*Cleaning, Inc. v. United States*, 42 Fed. Cl. 281, 298 (1998) (emphasis in original). Here, the *designated office* would be the 245 Murray Lane location, whereas the *government installation* includes the 7th and D Street Bid Office.

Admittedly, "the distinction between "designated office" and "government installation" is thus critical, though regrettably the terms are not defined in the FAR." *Id.* at 298 n.33. "[D]esignated office" refers to the particular location designated for the receipt of bids, whereas "government installation" refers to the entire government facility in which the "designated office" is located. *Id.* Although the 7th and D Street Bid Office is not physically located in the immediate vicinity of the 245 Murray Lane location, the evidence demonstrates that for all intents and purposes these locations were considered one in the same.

First, these two separate locations are often referred to as one location. The solicitation itself lists the "Office of Procurement Operations" at the following address: 7th and D, 245 Murray Lane, SW, Bldg. 410, Washington, DC 20528. (AR Tab 6 at 42.) According to Ms. Pearce, for the past three years the two addresses have been "synonymous." (Pl.'s Compl. Ex. 4, Attach. 1, Decl. of Lucretia Pearce, Jan. 18, 2007 at 4.) In 2004, Ms. Pearce was informed by the "Contracting Officer's Technical Representative ("COTR") . . . that Murray Drive (later changed to Murray Lane) is 7th and D Streets, SW." *Id.*

Second, the locations are treated the same for mail delivery and procurement activities and by contractors and agency employees alike. According to Ms. Aliza Y. Brown, the GSA contracting officer that accepted Shirlington's proposal on December 19, 2006, "the GSA Bid Room routinely receives proposals for DHS . . ." (AR Tab 30 at 557 ¶ 9) The security guards at the 7th and D Streets, SW, location informed Mr. Baker "that responses to Solicitations and proposals that list 245 Murray Lane are routinely signed in and delivered to the HSPD-12 Bid

Room at the 7th and D Streets, SW address." (Pl. Compl. Ex. 4, Attach. 2, Decl. of Christopher Baker, Jan. 18, 2007 at 7) "Shirlington has delivered and received documents labeled 245 Murray Lane, Bldg. 410 at the 7th and D Streets, SW address for the past three years." (Pl.'s Compl. Ex. 4, Attach. 1, Decl. of Lucretia Pearce, Jan. 18, 2007 at 4) Further, when performing under its past and current DHS contracts, Shirlington successfully submitted proposals, contract renewal documents, monthly invoices, and procurement modifications to the 7th and D Street location, even though the address has always read 245 Murray Lane. (*See* Pl.'s Compl. Ex. 4, Attach. 1, Decl. of Lucretia Pearce, Jan. 18, 2007 at 4.)

Although 245 Murray Lane was the "designated office" for bid submission, the Bid Room at 7th and D Street was treated, used and referred to as part of the DHS "government installation." As such, Shirlington's pre-deadline proposal submission to this location satisfied the third requirement of the statutory exception. Any argument to the contrary would be an attempt to read the rules in an "over-technical" manner that "contravene[s] the intent and spirit of the competitive system." AABLE Tank Servs., Inc., 1996 WL 655549, at *3. Thus, for the fore-mentioned reasons, and as evidenced by the record, Shirlington's proposal submission satisfied the three requirements of the statutory exception and DHS should be required to accept and consider it as properly filed.

**COUNT III**

**D. DHS Breached the Implied Duty of Good Faith and Fair Dealing**

Every government contract action, whether in the planning, pre- or post- award stage, carries with it an implied duty on the part of the government to treat the parties with whom it deals in good faith and fairly. This duty is commonly known as the "duty of good faith and fair dealing," and in *Malone v. United* States, 849 F.2d 1441, 1445 (Fed. Cir. 1988), the court stated:

> In our view, the government materially breached this contract. According to Restatement (Second) of Contracts § 241(e) (1981), "the extent to which the behavior of [a] party failing to perform . . .comports with standards of good faith and fair dealing" is a significant factor in determining whether that party's breach is material. The Restatement also states that "[s]ubterfuges and evasions violate the obligation of good faith," as does lack of diligence and interference with or failure to cooperate in the other party's performance. *Id.* § 205 comment d; *cf. Lewis-Nicholson, Inc. v. United States,* 550 F.2d 26, 32 (Ct. Cl. 1977).

While Shirlington believes strongly that the underlying reason for the sudden change in procurement strategy with respect to shuttle bus and executive sedan services at DHS resulted directly from the politically motivated Hearings on Capitol Hill referenced in the Complaint, and in particular the Congressional inquiries and letters demanding that Shirlington's contract be "revoked," Plaintiff's counsel is mindful of the very high burden of proof that accompanies any such allegation. In particular, Plaintiff's counsel is mindful of this Court's overall adherence to the "presumption of regularity," the very high wall which is created by the requirement that there must be "well-nigh irrefragable" proof of wrongdoing on the part of government officials, and the other strictures which make allegations of "bad faith" virtually impossible to prove. Nevertheless, Plaintiff feels compelled to put this series of events into context by at least calling the Court's attention to these matters. It cannot go without notice that these hearings on this company's little transportation contract were among the first, if not the very first, oversight hearings held under then Chairman Peter King's sub-committee. Plaintiff further notes that these hearing were held at a time when weightier issues were also due consideration, such as FEMA's post-Katrina conduct.

However, if this scheme to deprive Shirlington of its current and any future contract is true, it is equally true that, on balance, the attempt, politically motivated or not, was so bungled that, to prove its case, Plaintiff need not rely on additional evidence of wrongdoing other than the flagrant violations of statute and regulations, abuse of discretion and complete failure to give

rational explanations for the actions which were actually taken. That fact, coupled with the almost insurmountable wall in front of small businesses such as Shirlington to prove such actions, led Plaintiff not to seek discovery on this Count, but rather to rely on the actual actions already in the record to show both violations of statute and regulation and breach of the implied duty of good faith and fair dealing.

## V. INJUNCTIVE RELIEF

Shirlington asks that DHS be enjoined from proceeding with an award under the Solicitation. While recognizing that the award of injunctive relief is extraordinary, Shirlington contends that the limited circumstances of this case warrant such relief.

### A. Standard

Because Shirlington can demonstrate that (1) it is likely to succeed on the merits; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) the harm to Shirlington if an injunction is not granted outweighs the harm to the Government if an injunction is granted; and (4) the injunction is not against the public interest, a permanent injunction is warranted. *PGBA, L.L.C. v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citations omitted); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Although "[n]o one factor, taken individually, is necessarily dispositive," *FMC Corp.*, 3 F.3d at 427, a review of these factors indicates that permanent injunctive relief is warranted in the instant action.

### B. Likelihood Of Success On The Merits

As indicated by the argument above, Shirlington should prevail on the merits of this case, having demonstrated that DHS' decision not to set-aside the Solicitation for HUBZone small business concerns was arbitrary and capricious, an abuse of discretion, and clearly violative of federal procurement law and regulations. 28 U.S.C. § 1491(b)(4), referencing the standards set forth in 5 U.S.C. § 706. In addition, Shirlington should also prevail on the merits, having

demonstrated that DHS erred in refusing to accept its proposal as timely filed. Finally, Shirlington has also laid bare facts evidencing the fact that DHS' decision to replace Shirlington's Existing Contract, which has over three years to run, with outstanding service to DHS, was motivated by DHS' succumbing to political pressure and that the solicitation was therefore issued in breach of the implied duty of good faith and fair dealing.

Shirlington will also be prejudiced by DHS' actions. Prejudice is a question of fact and to demonstrate this prejudice, Shirlington "must show that there was a 'substantial chance' [sic] it would have received the contract award but for [that] error . . ." *Bannum, Inc. v. United States*, 404 F.3d at 1346 at 1353 (Fed. Cir. 2005) (citations omitted); *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)); *see also OTI Am., Inc. v. United States*, 73 Fed. Cl. 758, 767 (2006). This "substantial chance" standard is lenient and does not require proof that but for the errors, Shirlington would have won the contract. *See Bannum, Inc.*, 404 F.3d at 1358. DHS' failure to comply with the legal requirements governing the conduct of this Solicitation has denied Shirlington the opportunity to compete for this procurement. As the incumbent on the Existing Contract, Shirlington had a more than "substantial chance" of winning but for DHS' improper decision not to set-aside the Solicitation and its failure to accept Shirlington's proposal.

**C. Irreparable Injury**

Shirlington will suffer irreparable injury if it is denied injunctive relief because it will be denied a fair opportunity to compete under the solicitation and to benefit from a lawful procurement process. When assessing irreparable injury, the relevant inquiry is whether the plaintiff has an adequate remedy in the absence of an injunction. *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 716-17 (2006) quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). Shirlington will be irreparably harmed if the Solicitation is not enjoined

because it will lose the opportunity to compete on a level playing field, which this Court has repeatedly acknowledged constitutes sufficient irreparable harm. *See Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 744 (2000) (finding irreparable harm and granting injunction because of protester's "lost opportunity to compete in a fair competitive bidding process.") (citations omitted).[6]

Despite the clear mandate of the HUBZone Act, DHS has stated that its use of a small business set-aside rather than a HUBZone set-aside was appropriate in that it "did not penalize any potential HUBZone offerors." (AR Tab 12 at 259.) DHS is wrong, as forcing HUBZone firms to compete with other small businesses was inherently prejudicial – to maintain otherwise would be to deem the HUBZone Act superfluous. As the United States District Court for the Eastern District of Virginia has observed, "the HUBZone Act gives a substantial preference to particular small businesses over all other businesses, large and small." *Metro Mach. Corp. v. SBA*, 305 F.Supp. 2d 614, 626 (E.D. Va. 2004) (emphasis added). Indeed, [t]he overarching policy behind the HUBZone Act was to increase employment opportunities, economic development, and investment in areas where unemployment has historically been above national averages." *Id.* (quotation marks omitted). This goal is not furthered by DHS' act of setting aside the Solicitation for all small businesses rather than HUBZone businesses only.

In fact, by failing to properly set-aside the Solicitation for a HUBZone small business concern, Shirlington has been denied the opportunity to compete in a valid procurement process. The Court's failure to issue a permanent injunction will result in a competitive disadvantage to

---

[6] *See also PGBA, L.L.C. v. United States*, 57 Fed. Cl. 655, 664 (2003) ("This court has acknowledged that a lost opportunity to compete may constitute an irreparable harm."); *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998) ("[T]he lost "opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm.") (citations omitted).

Shirlington as it will not be afforded the preferential treatment to which it is statutorily entitled as a HUBZone small business concern. Without injunctive relief, the remedy that Shirlington seeks (requiring DHS to conduct a proper procurement under a new Solicitation) will, in a very practical sense, be completely unavailable. Thus, permanent injunctive relief is proper.

**D. Public Interest**

The Federal Circuit has long recognized that the public interest lies in honest, open and fair competition in public procurement. *See PGBA, L.L.C.*, 57 Fed. Cl. at 663. Further, "[i]t is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004) (citations omitted). DHS' violations of federal procurement statutes, regulations and policies adversely affect and undermine the integrity of the entire federal procurement process. Shirlington submits that granting injunctive relief would further the overriding and predominating public concern for preserving fair and open competition. Furthermore, Congress has mandated these set-asides in the implementation of its public policy and the residents of and business owners within HUBZones have made substantial investments based on a reliance on the government's doing what it is supposed to do. Fulfilling that expectation is also a preservation of the public interest.

**E. Balance Of Harms**

Because the balance of harm favors Shirlington, injunctive relief is appropriate in this case. Under the terms of its Existing Contract with Shirlington, DHS is currently receiving services substantively similar to those sought in this Solicitation. The Existing Contract has been optioned such that services are scheduled to continue through July 26, 2007. An additional option available under the Existing Contract would allow DHS to continue to receive services until the end of October 2007. Thus, an injunction staying the award of the new Solicitation

would not result in any service or performance interruptions for DHS. At most, DHS would suffer a delay before the contract may be awarded. However, delay in awarding a contract alone is insufficient to warrant denial of injunctive relief. *Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388, 399 (1999), *Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500, 514 (2005); *PGBA, L.L.C.*, 57 Fed. Cl. at 664.

In contrast, Shirlington would suffer irreparable harm as set forth previously in this Memorandum should this Court refuse injunctive relief. It would lose potential profits, as well as all reasonable probability of obtaining the subject contract. The harm caused by a minimal delay in a contract resulting from an injunction is significantly outweighed by the harm Shirlington will suffer if it is illegally and unreasonably denied the opportunity to compete in a valid procurement process. Thus, this Court should recognize that any harm to DHS caused by a slight delay in contract award is minor as compared to the harm that will be caused to Shirlington if the Solicitation is not properly remedied.

## VI. CONCLUSION

For the reasons stated above, the Court should grant Shirlington's Motion for Judgment on the Administrative Record and for declaratory and injunctive relief. Shirlington respectfully requests that the Court enter a permanent injunction stating that DHS' actions in this procurement were not in accordance with the law; and that the current Solicitation be canceled and a new Solicitation issued as a HUBZone set-aside. Alternatively, Shirlington requests that

DHS be required to accept Shirlington's proposal under the small business solicitation as timely filed. Plaintiff also respectfully requests that it be awarded its attorneys' fees under the Equal Access to Justice Act.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, NW, Ninth Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fax: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

May 2, 2007

OF COUNSEL:
William J. Spriggs
Katherine A. Schultz
SPRIGGS & HOLLINGSWORTH

**CERTIFICATE OF FILING**

I hereby certify that on the 2nd day of May 2007, a copy of the foregoing "Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record and for Declaratory and Injunctive Relief – PUBLIC VERSION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David J. Taylor

David J. Taylor