**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
***Bid Protest***

| | |
|---|---|
| SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 07-220C<br>Judge Braden |

**PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION**

Pursuant to Rule 59 of the Rules of the U.S. Court of Federal Claims ("RCFC"), Plaintiff, Shirlington Limousine & Transportation, Inc. ("Shirlington" or "Plaintiff"), respectfully requests that the Court reconsider a portion of its Memorandum Opinion and Order dated June 27, 2007, that granted Defendant's Motion to Dismiss.

**DISCUSSION**

## I. The Court Has Authority to Reconsider Its Ruling

RCFC 59(a)(1) authorizes this Court to reconsider prior rulings. Specifically, "reconsideration may be granted to all or any of the parties on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The decision to grant a Motion for Reconsideration is within the court's discretion. *DeMarco Durzo Dev. Co. v. United States*, 73 Fed. Cl. 731, 734 (2006) (citation omitted). The burden lies with the moving party to demonstrate a manifest error of law or mistake of fact, and the party must show either (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence

is now available; or (3) that the motion is necessary to prevent manifest injustice. *Griswold v. United States*, 61 Fed. Cl. 458, 460-61 (2004) (quoting *First Fed. Lincoln Bank v. United States*, 60 Fed. Cl. 501, 502 (2004)). In this case, reconsideration is requested to prevent an unjust outcome.

## II. The Court Improperly Granted Defendant's Motion to Dismiss

The Court determined in its Memorandum Opinion and Order that the Plaintiff does not have standing to seek an adjudication of this bid protest in the U.S. Court of Federal Claims because as a matter of law, Plaintiff was neither a "prospective offeror" nor an "actual offeror." Order at 15-16. Most respectfully, Plaintiff files this Motion for Reconsideration to call the Court's attention to several matters that may have become confused in the midst of the multitude of filings made during the prosecution of this action. In particular, Plaintiff asks the Court to reconsider its decision with respect to Count I of the Complaint. Plaintiff does not seek reconsideration of the decision with respect to Count II.

The simple fact is that Shirlington filed two separate and distinct protests at the Government Accountability Office ("GAO") for two separate and distinct reasons.

The first was a classic "pre-award" protest of the terms of Solicitation Number HSHQDC-07-R-00009 (the "Solicitation") and addressed the Department of Homeland Security's ("DHS") failure to set aside this procurement for Historically Underutilized Business Zone ("HUBZone") Small Business Concerns ("SBCs").[1] This is an issue of major importance with potential ramifications for the over 13,000 HUBZone SBCs currently certified by the U.S. Small Business Administration. Further, this is a matter of first impression in this Court. It is vitally important that this decision on the merits be resolved so federal agencies will have

[1] Plaintiff's first protest also argued that the terms of the Solicitation were unduly restrictive. That issue was not raised in this court and therefore is irrelevant to this motion.

guidance regarding the implementation of the HUBZone program and how to go about making a set-aside determination. It is also clear that Shirlington, as a HUBZone SBC, and the incumbent performing a contract issued as a HUBZone contract, had interested party status as a prospective offeror to question whether DHS followed the law in crafting the terms of the current Solicitation.

It is important to note that Shirlington elected to submit its proposal under the flawed small business set-aside Solicitation solely to be in the running to win a new contract in the event that GAO, and perhaps this Court, later ruled that DHS' failure to set aside the procurement for HUBZone SBCs was proper.

The second and distinct protest was filed at GAO when it was learned for the first time through the Agency Report filed in the initial GAO protest that the proposal was not accepted by DHS. Shirlington's attempts at GAO and in this Court in Count II were designed solely to afford Shirlington a vehicle to compete in the event that Count I was unsuccessful. It was never Shirlington's thought that it would be required to have a proposal submitted in order to have "actual offeror" status for interested party purposes; and that was not why it submitted a proposal.

The implication of this Court's ruling is far reaching, as a protester will now be forced to choose the Court of Federal Claims as its first forum for pre-award protests, or it will lose its right to a review of the protest decision. The doors of the GAO, a forum that traditionally affords the parties and the tribunal a quicker, less expensive mechanism for resolving these issues, will be closed to any protester wishing an avenue which affords review of an initial decision. Historically, parties have gone to the Court of Federal Claims after losing at GAO, if their case warranted that review, even though it is not technically an "appeal" but rather a *de*

*novo* review. Judicial review is a hallmark of our system, but it would be foreclosed under this Court's ruling and the choice of forum will therefore be obvious – the Court of Federal Claims for all pre-award bid protests. Protesters may well flood this Court with pre-award protests because they wish to be assured review of the decision in a court of law, by a Judge, rather than a GAO attorney, with review by the Federal Circuit a possibility if they lose. Surely, this Court does not desire to have any and all pre-award protests brought before it for disposition. Unfortunately, such is the likely result should this Court's ruling stand.

To that end, Shirlington notes that in fact, the statutory language of "prospective offeror" relates to pre-award protests, while "actual offeror" relates to post-award protests. It is clear that a party that will submit an offer if the terms of a solicitation are corrected does not need to submit an offer under the flawed solicitation in order to have interested party status. *KSD, Inc. v. United States*, 72 Fed. Cl. 236, 247 (2006), (stating "[t]herefore, when the government's actions wrongfully prevent a bidder from qualifying for or bidding on a solicitation, the government cannot use the contractor's failure to qualify or bid on the solicitation as grounds for finding a lack of standing"); *ABF Freight Sys., Inc. v. United States*, 55 Fed. Cl. 392, 399 (2003) (finding that a plaintiff that did not submit a bid had standing because the plaintiff was "discouraged" by alleged improprieties from submitting a bid during the agency's solicitation process). However, in order to bring a post-award protest, one obviously needs to have been an actual offeror to be considered for award if successful in the protest. *Comprehensive Health Servs., Inc. v. United States*, 70 Fed. Cl. 700, 717-18 (2006).

A careful reading of the Court's Memorandum Opinion and Order means that from now on, any pre-award protester wishing to file at the Court of Federal Claims will be required to submit a proposal under the flawed solicitation it is protesting or risk losing interested party

status. This is an unfortunate result and the Federal Circuit did not manifest an intention in *Rex* to substantially revise the law in this area. Indeed, *Rex*, the case cited by the Government and this Court, is in fact a post-award protest action. *Rex Serv. Corp. v. United States*, 448 F.3d 1305 (2006). Further, in *Rex*, the Federal Circuit specifically left open the question of how to proceed in a case such as this – where the protester filed a protest before the end of the solicitation period that establishes that improper agency action prevented the party from submitting a bid. *Rex*, 448 F.3d at 1308, n. ** (stating "[w]e are not presented with, and do not decide, whether an agency protest, filed before the end of the solicitation period, that establishes the party expected to bid, but was prevented from doing so by improper agency action, may meet the requirements of *MCI* and secure prospective party status for a subsequent bid protest action." (emphasis omitted)).[2] Of course, Shirlington was not prevented from filing a bid, but the effect is equally detrimental when a party is either prevented by government action or when the very terms of the solicitation are flawed, such as here, where Shirlington was unable to submit a bid under a proper HUBZone set aside.

A more practical approach for this procedural quandary can be found in the reasoning articulated by the district court in *Baltimore Gas & Electric Co.*, which recognized that a protester cannot pursue its claims in two fora at once and granted the protester standing, rather than penalizing it for electing to pursue its claim first at the GAO. *Baltimore Gas & Elec. Co. v. United States*, 133 F.Supp. 2d 721, 730 (D. Md. 2001) (noting that the GAO will dismiss any protest where the matter involved is the subject of litigation before a court of competent

---

[2] Furthermore, in the recent case of *Blue & Gold Fleet, L.P. v. United States*, the Federal Circuit said a Complaint must be filed by the closing date, a requirement that Shirlington met with the filing of its December 7, 2006 protest. *Blue & Gold Fleet, L.P. v. United States*, --- F.3d ---; 2007 WL 1815678, at * 5 (Fed. Cir. 2007). (Previous cases had sometimes allowed filing after the closing date, but before award was made.)

jurisdiction and concluding "Clearly, ADRA did not intend simultaneous protests to proceed in two fora. Thus, [the court] find[s] that [plaintiff's] suit is timely." (citation omitted)).

The policy underlying this interpretation of the filing requirements is to allow the protester to put the government on notice of flaws in a solicitation, giving the agency the opportunity to take swift corrective action, without significantly delaying the procurement. Should the Court's ruling in this case remain, this policy would be subverted as protesters would bypass the GAO, and instead go to the Court of Federal Claims to file virtually all of their pre-award protests for fear of losing their interested party status, and therefore having their cases dismissed if they do not go to Court before the solicitation's closing date. The policy interest is in giving the government actual notice of the problem in the solicitation itself prior to proposal (bid) submission date, and that policy objective was met in this case. And it is respectfully submitted that that policy is preserved if this Court agrees that a prospective offeror (bidder) which files a pre-award bid protest at the GAO before the closing date, but which loses in that forum, can seek review in this Court, even though it did not submit an offer under the flawed solicitation.

Indeed counsel has such a case pending, wherein discrete elements of a government requirement were "bundled" into a single solicitation. Small businesses that have provided each of four elements of the requirement have protested the "bundled" solicitation. If they happen to lose at GAO, these four small companies, which could not make a single offer under the "bundled" solicitation, will be foreclosed from filing in this Court, under the current Opinion and Order, even though they could never have been "actual offerors" under the original, but flawed, solicitation. This ruling means they should have come to the Court of Federal Claims in the

beginning, or not at all. Surely this harsh and unjust result is not what the Court had in mind in its initial decision.

**CONCLUSION**

For the foregoing reasons, Shirlington respectfully requests that the Court reconsider its Memorandum Opinion and Order of June 27, 2007, and grant Plaintiff's Motion for Judgment on the Administrative Record on Count I and order that a HUBZone competition be held for the new DHS transportation contract.

Respectfully submitted,

David J. Taylor
SPRIGGS & HOLLINGSWORTH
1350 I Street, NW, Ninth Floor
Washington, D.C. 20005
Ph: (202) 898-5800
Fax: (202) 682-1639

Mr. Taylor's Direct Dial
(202) 898-5838

davidtaylor@spriggs.com

*Counsel of Record for Plaintiff*
*Shirlington Limousine & Transportation, Inc.*

July 6, 2007

OF COUNSEL:

William J. Spriggs
Katherine A. Schultz
SPRIGGS & HOLLINGSWORTH

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of July, 2007, a copy of the foregoing "Plaintiff's Motion for Partial Reconsideration" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David J. Taylor