# In the United States Court of Federal Claims

No. 07-220C
Filed: August 9, 2007
**TO BE PUBLISHED**

*************************************

SHIRLINGTON LIMOUSINE & TRANSPORTATION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*************************************

Bid Protest;
HUBZone Act, 15 U.S.C. § 657a,
48 C.F.R. § 19.1305;
Motion for Partial Reconsideration,
RCFC 59.

**David J. Taylor,** Spriggs & Hollingsworth, Washington, D.C., counsel for Plaintiff.

**Kenneth D. Woodrow**, United States Department of Justice, Civil Division, Washington, D.C., counsel for Defendant.

**Rose J. Anderson**, United States Department of Homeland Security, General Law Division, Washington, D.C., of Counsel.

## MEMORANDUM OPINION AND FINAL ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION

**BRADEN,** ***Judge***

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

On November 20, 2006, the United States Department of Homeland Security ("DHS") posted Solicitation HSHQDC-07-R-00009 for a DHS-wide transportation services contract ("Solicitation") on the FedBizOps website. *See Shirlington I*, 77 Fed. Cl. 157, 160 (citing AR at 29). On December 7, 2006, Plaintiff filed a protest with the United States Government Accountability Office ("GAO"), alleging that the Solicitation violated the terms of the HUBZone Act, 15 U.S.C. § 657a (2004), and FAR § 19.1305 (2006), by failing to restrict competition to HUBZone small business concerns and

[1] The facts herein recited were derived from: *Shirlington Limousine & Transp., Inc.* v. *United States*, 77 Fed. Cl. 157 (2007) ("*Shirlington I*"); and the April 17, 2007 Administrative Record and Supplements thereto ("AR at 1-662").

because the facility requirements were unduly restrictive. *Id*. at 161 (citing AR at 11). On January 8, 2007, DHS moved to dismiss Plaintiff's GAO protest, because Plaintiff did not submit a proposal in response to the Solicitation, and therefore did not have standing. *Id*. at 162 (citing AR at 255-56). On January 10, 2007, Plaintiff's counsel sent a letter to DHS stating that Plaintiff "hand delivered its proposal to DHS on December 19, 2006, at 9:46 a.m." *Id.* (citing AR at 529-30). Later that day, the Contracting Officer went to the General Services Administration ("GSA") bid room, located at 7th and D Streets, and learned from the Chief of the GSA Operations Branch Procurement Division that Plaintiff's proposal was submitted there. *Id.* (citing AR at 506). On January 11, 2007, DHS's counsel renewed the Motion to Dismiss Plaintiff's GAO protest for lack of standing at the GAO and presented evidence that Plaintiff submitted the proposal to a location other than the one specified in the Solicitation. *Id*. at 163 (citing AR at 506).

On January 19, 2007, Plaintiff filed a second protest at GAO, challenging DHS's rejection of the proposal as late. *Id*. (citing AR at 539-49).

On February 8, 2007, GAO denied DHS's Motion to Dismiss Plaintiff's December 7, 2006 protest. *Id*. (citing AR at 534 (e-mail from GAO counsel to DHS counsel stating: "GAO will dismiss a protest when no element of that protest need be considered on the merits. I see some merit to this protest, and so I will not grant the agency's motion to dismiss.")).

On March 13, 2007, GAO denied Plaintiff's December 7, 2006 protest on the grounds that: DHS's decision not to set aside the procurement for HUBZone businesses was reasonable, because there was not a reasonable expectation that offers would be received from two or more HUBZone businesses; and the Solicitation was not unduly restrictive, because the record established that the security requirements reasonably were designed to meet DHS's needs. *Id*. (citing AR at 433-42). On March 30, 2007, GAO denied Plaintiff's January 19, 2007 protest, because the Government was not the cause of Plaintiff's late proposal. *Id*. (citing AR at 598-602).

On April 4, 2007, Plaintiff filed a Complaint ("Compl.") in the United States Court of Federal Claims, together with a Motion for a Temporary Restraining Order, a Motion for a Preliminary Injunction, and a Memorandum of Points and Authorities in support. Count I of the Complaint alleged that "DHS's decision not to set aside the Solicitation for HUBZone small business concerns was arbitrary, capricious, and not in accordance with the law and regulation." Compl. ¶ 13. Count II alleged that DHS erred in failing to accept Plaintiff's proposal, pursuant to the case law and FAR § 15.208(b)(1)(ii) exceptions for late proposals. *Id.* ¶¶ 36-56. Count III alleged that "DHS breached the implied duty of good faith and fair dealing in deciding to abrogate the Existing Contract and in conducting its research and analysis of potential HUBZone offerors when drafting the current Solicitation." *Id.* ¶ 58. In addition, the Complaint requested that the court "[d]eclare that the Solicitation should be canceled and reissued as a HUBZone small business set-aside" or else "declare that DHS should be required to accept [Plaintiff's] proposal for the small business contract as timely and properly filed." *Id.* at 21 (Prayer for Relief). The Complaint also requested that the court "[p]reliminarily and permanently enjoin DHS from proceeding with an award of the Contract." *Id.*

On April 17, 2007, the Government filed the Administrative Record.[2] On April 30, 2007, Plaintiff filed a Motion for Judgment on the Administrative Record and Memorandum in support. On May 9, 2007, Plaintiff filed a Supplemental Brief in support. On May 15, 2007, the Government filed a Motion to Dismiss or, in the Alternative, for Judgment Upon the Administrative Record and Opposition to Plaintiff's Motion for Judgment Upon the Administrative Record. On May 18, 2007, Plaintiff filed a Reply and Opposition to the Government's Motion to Dismiss or, in the Alternative, for Judgment on the Administrative Record ("Pl. AR Reply"). On May 23, 2007, the court held oral argument.

On June 27, 2007, the court granted the Goverment's Motion to Dismiss, determining that Plaintiff did not have standing, because it did not file a protest with the United States Court of Federal Claims before the deadline for submission of bids or submit a timely bid under the Solicitation. *See Shirlington I*, 77 Fed. Cl. at 167 (quoting *Rex Serv. Corp.* v. *United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006) ("It is not relevant to [plaintiff's] status that it filed a pre-award agency protest[.]")). The court also held that FAR § 15.208(b)(1) and the judicially created exception, allowing the Government to accept late bids under certain circumstances, did not apply in this case. *Id.* at 171-72.

On July 6, 2007, Plaintiff filed a Motion for Partial Reconsideration of Count I of the Complaint ("Pl. Mot. Rec."). On July 9, 2007, the court invited the Government to respond by July 25, 2007. *See Order*, *Shirlington Limousine Transp., Inc.* v. *United States,* No. 07-220C (Fed. Cl. July 9, 2007). On July 25, 2007, the Government filed a Response ("Gov't Resp.").

## II. DISCUSSION.

### A. Standard For Reconsideration.

RCFC 59(a) provides that "reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The decision to grant a motion for reconsideration is within the court's discretion. *See Yuba Natural Res., Inc.* v. *United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court"). On other occasions, the court has required that the moving party identify a

[2] On May 7, 2007, the Government supplemented the Administrative Record with two e-mail messages, dated November 28, 2006 and December 5, 2006. On May 9, 2007, Plaintiff also supplemented the Administrative Record with: January 31, 2007 Additional Comments of Protester in File No. B-299241; January 18, 2007 Declaration of Lucretia Pearce, Plaintiff's Chief Operating Officer; and January 18, 2007 Declaration of Christopher Baker, Plaintiff's Chief Executive Officer. On May 14, 2007, Plaintiff supplemented the Administrative Record with the May 1, 2007 Deposition of Frank Rumph, Contract Specialist. On May 23, 2007, Plaintiff supplemented the Administrative Record with the April 18, 2007 Declaration of Lucretia Pearce, Plaintiff's Chief Operating Officer, and a document marked "Sprint cellular services call detail."

manifest error of law or mistake of fact. *See Coconut Grove Entm't, Inc.* v. *United States*, 46 Fed. Cl. 249, 255 (2000) (holding that a movant must "point to a manifest error of law or mistake of fact" (citation omitted)). To show a "manifest error of law or fact," the moving party must demonstrate either "(1) that an intervening change in controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." *First Fed. Lincoln Bank* v. *United States*, 60 Fed. Cl. 501, 502 (2004).

**B. Plaintiff's Motion For Partial Reconsideration.**

**1. Plaintiff's Arguments.**

Plaintiff requests partial reconsideration of the court's June 27, 2007 Memorandum Opinion and Final Order, holding that, in accordance with *Rex*, a timely pre-award bid protest filed with GAO does not necessarily confer standing to bring a protest in the United States Court of Federal Claims. *See* Pl. Mot. Rec. at 2 (citing *Shirlington I*, 77 Fed. Cl. at 167). Plaintiff contends that this ruling will force prospective pre-award bid protest plaintiffs to choose between filing cases with GAO or with the United States Court of Federal Claims. *Id*. at 3-4. Plaintiff argues that this contradicts the current practice, where plaintiffs initially may file with GAO and effectively appeal to the United States Court of Federal Claims for *de novo* review. *Id*. Plaintiff insists that, if future plaintiffs are forced to choose between forums, the majority would choose the United States Court of Federal Claims over GAO to ensure the right of judicial review, resulting in a flood of unnecessary litigation. *Id*. at 4, 6. Plaintiff argues that this would undermine the general policy of allowing the Government to be put on notice of a solicitation problem prior to both the deadline for submission of bids and any resulting litigation. *Id*. at 6. Plaintiff also argues that future plaintiffs would have to incur the unnecessary expense of submitting a bid under a flawed solicitation to preserve standing at both GAO and the United States Court of Federal Claims. Based on these policy considerations, Plaintiff emphasizes that the United States Court of Appeals for the Federal Circuit's decision in *Rex* was intended only to apply to post-award, not pre-award bid protests. *Id*. at 5. Accordingly, Plaintiff concludes that dismissing this case on standing grounds will result in "manifest injustice." *Id*. at 2 (quoting *First Fed. Lincoln Bank*, 60 Fed. Cl. at 502).

**2. The Government's Response.**

The Government responds that Plaintiff's standing argument has been considered by the court. *Id.* at 2-5 (citing *Shirlington I*, 77 Fed. Cl. at 167 ("Since Plaintiff chose GAO as the forum of resolution, Plaintiff effectively relinquished the ability to file a timely protest in the United States Court of Federal Claims. (citations omitted))). The Government further argues that Plaintiff's "vague assertions of negative policy implications" do not meet the standard of "manifest injustice." *Id*. at 5 (citing *Pacific Gas & Elec. Co.* v. *United States*, 74 Fed. Cl. 779, 785 (2006) ("'Manifest injustice' thus refers to injustice that is apparent to the point of being almost indisputable.")).

### 3. The Court's Resolution.

#### a. Plaintiff's Motion Is An Attempt To Relitigate The Court's Determination Of Standing.

In the June 27, 2007 Memorandum Opinion and Final Order, the court recognized that Plaintiff had to choose between filing with GAO or with the United States Court of Federal Claims. *See Shirlington I*, 77 Fed. Cl. at 167 ("Since Plaintiff chose GAO as the forum of resolution, Plaintiff effectively relinquished the ability to file a timely protest in the United States Court of Federal Claims." (citing 4 C.F.R. § 21.11(b) ("GAO will dismiss any case where the matter involved is the subject of litigation before, or has been decided on the merits by, a court of competent jurisdiction. GAO may, at the request of a court, issue an advisory opinion on a bid protest issue that is before the court."))). Likewise, the court considered and rejected Plaintiff's interpretation of *Rex*, determining that although *Rex* "involved a subcontractor's attempt to bring a post-award bid protest in the United States Court of Federal Claims after making no effort to submit a proposal, those facts do not affect the relevant principle that a timely pre-award protest submitted to GAO does not confer plaintiff standing to later bring a protest in the United States Court of Federal Claims." *Id.* Plaintiff insists, however, that the United States Court of Appeals for the Federal Circuit "specifically left open the question of how to proceed in a case such as this – where the protester filed a protest before the end of the solicitation period that established that improper agency action prevented the party from submitting a bid." Pl. Mot. Rec. at 5 (citing *Rex*, 448 F.3d at 1308, n.** ("We are not presented with, and do not decide, whether an agency protest, filed before the end of the solicitation period, that establishes the party expected to bid, but was prevented from doing so by improper agency action, may meet the requirements of *MCI* [*Telecommunications Corp.* v. *United States,* 878 F.2d 362 (Fed.Cir.1989)] and secure prospective party status for a subsequent bid protest action." (emphasis omitted))). In this case, however, Plaintiff alleged that the contract should be set-aside for competition among HUBZone small businesses only, but was not prohibited from submitting a bid under the Solicitation by improper agency action. *See* Compl. ¶¶ 3, 12, 13. Moreover, the court was aware that rather than choose between forums, future plaintiffs may have an incentive to both file a protest with GAO and submit a bid under the flawed solicitation. *See* Pl. AR Reply at 4 ("Accepting the Government's interpretation of 'prospective bidder' would essentially nullify the term's meaning because it would require all contractors to be actual offerors to preserve their interested party status in any pre-award protest.").

Motions pursuant to RCFC 59 "are not to be used as relief because an unhappy party failed to urge a theory which it could have raised in original proceedings." *Bernard* v. *United States*, 12 Cl. Ct. 597, 598 (1987); *see also Keeton Corrections, Inc.* v. *United States*, 60 Fed. Cl. 251, 253 (2004) ("'Reconsideration of the court's determination . . . is not intended to give an unhappy litigant an additional chance to sway the court.'" (quoting *Paalan* v. *United States*, 58 Fed. Cl. 99, 105 (2003))). Because Plaintiff fails to raise any issue that was not previously presented to and considered by the court, the Motion for Partial Reconsideration is denied.

**b. Plaintiff's Motion Does Not Meet The Standard Of "Manifest Error."**

Plaintiff also has not demonstrated that the court's decision in *Shirlington I* was based on a "manifest error of law." *See First Fed. Lincoln Bank*, 60 Fed. Cl. at 502 ("A motion for reconsideration . . . must be based on a manifest error of law or mistake of fact." (citations omitted)). Plaintiff cites to no controlling legal authority, but instead relies on Plaintiff counsel's understanding of "tradition," "policy," and the implication of the court's ruling for his other pending cases. *See* Pl. Mot. Rec. at 3-7 ("Indeed counsel has such a case pending, wherein discrete elements of a government requirement were 'bundled' into a single solicitation. Small businesses that have provided each of four elements of the requirement have protested the 'bundled' solicitation. If they happen to lose at GAO, these four small companies, which could not make a single offer under the 'bundled' solicitation, will be foreclosed from filing in this Court, under the current Opinion and Order, even though they could never have been 'actual offerors' under the original, but flawed solicitation.").

Likewise, Plaintiff fails to provide any evidence that the court's ruling in this case will result in "manifest injustice." *See First Fed. Lincoln Bank,* 60 Fed. Cl. at 502 (In order to show a "manifest error of law or fact," the moving party must demonstrate . . . "that the motion is necessary to prevent manifest injustice." (citation omitted)). Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is "apparent to the point of being indisputable." *Pacific Gas & Electric*, 74 Fed. Cl. at 785; *see also Ammex* v. *United States*, 52 Fed. Cl. 555, 557 (2002) (defining "manifest" as "clearly apparent or obvious"). Requiring a litigant to be bound by the choice between GAO and the United States Court of Federal Claims, does not result in "obvious" or "manifest" injustice, but merely requires a plaintiff to weigh litigating options when selecting a forum. Similarly, submitting a bid under a "flawed solicitation" is not an "obvious" or "manifest" injustice, but an added expense that a plaintiff may choose to incur to ensure standing in multiple forums. In addition, a government contractor that initiates a protest at GAO challenging a "flawed solicitation" only needs to submit a bid if the contractor estimates a high likelihood of failure at GAO, in which case the contractor may have been better off filing with the United States Court of Federal Claims. Finally, Plaintiff's bare assertion that future plaintiffs will opt for judicial review, resulting in a "flood" of litigation in the United States Court of Federal Claims, does not evidence "manifest injustice." *See* Pl. Rec. Mot. at 4.

## III. CONCLUSION.

For the aforementioned reasons, Plaintiff's July 6, 2007 Motion for Partial Reconsideration is denied.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**